Frank E. WHITE, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 90–720.

United States Court of Veterans Appeals.

Feb. 18, 1994.

Frank E. White, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and David W. Engel, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

HOLDAWAY, Judge:

Appellant, Frank E. White, appeals from a January 28, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied appellant service connection for residuals of a motor vehicle accident and hearing loss. *Frank E. White*, BVA 93–1883 (Jan. 28, 1993). The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a). These claims were previously before the Court, and were remanded to the Board for appropriate action. *White v. Derwinski*, 1 Vet.App. 519 (1991).

## I. FACTS

Appellant served on active duty in the Army from May 1, 1956, to April 30, 1958. His service medical records (SMRs) were destroyed in a fire at the National Personnel Records Center (NPRC).

Private medical records indicate that appellant injured his back in November 1974 when he bent over to do some cleaning at work. He could not recall what position he was in, but did recall that he had a sudden, sharp knife-like pain that radiated down his left leg and rendered him unable to move. Appellant told medical personnel that the pain had really started a few days before when he was moving a 150–pound ball-bearing. Appellant continued to complain about his back pain through 1975. In early 1975, it

was noted that there was decreased left Achilles reflex without sensation loss. The physician felt there was some evidence of nerve irritation. In April 1975, appellant was offered the opportunity to undergo an exploratory laminectomy, but he elected to remain with a conservative course of treatment.

In December 1976, appellant filed for compensation for a low back injury, with nerve damage in the low back, left shoulder, and left leg, with an onset date of November 4, 1974. He also indicated he had not received any treatment for these problems while in the military. In August 1987, appellant filed a claim for compensation benefits for headaches and neck and shoulder problems. He claimed that he wrecked two Army vehicles in 1957, and that since 1958 he had had headaches and neck and shoulder problems. He stated that he had been treated by three civilian doctors, Dr. McNeeley, Dr. DeFiore, and Dr. Spray.

In November 1987, the VA requested a copy of appellant's SMRs. The VA was notified that his records had been destroyed in a fire at the NPRC. A Statement of the Case (SOC) indicates that appellant was notified on March 10, 1988, that his claim could not be granted. Appellant filed a VA Form 1–9 for his appeal to the BVA on May 2, 1988. He stated that he wanted to add a claim for frostbite. Attached to the Form 1–9 was a police statement regarding a vehicle accident in January 1957. The police report indicated that only one Army vehicle was involved in the collision, and made no reference whatsoever to any personal injuries suffered as a result of this accident. Appellant also submitted a lay statement from a fellow soldier, Elmer W. Foust, who wrote: "I don't really know what to say, but I know he had a wreck in a[n] Army truck while on duty." Also on his Form 1–9, appellant referred to several VA medical centers (MCs) (Johnson City, Knoxville, and Nashville, Tennessee, and Youngstown, New York) where he was supposedly treated. He did not, however, list dates or the nature of the treatment.

Based on this information, the VA regional office (RO) requested copies of medical records from the VAMCs in Youngstown, New York, and Nashville and Knoxville, Tennes-

see. Records indicating treatment at these facilities were submitted. These records, dated March 1987 to May 1988, indicated treatment for epilepsy, chronic headaches, tension, a fractured right wrist, a seizure disorder, peripheral vascular disease, and degenerative arthritis.

These records also show a March 10, 1987, x-ray of the cervical spine which found minimal to moderate degenerative changes of the cervical spine. There was slight narrowing of the C4–5 and C5–6 interspaces. A medical entry dated June 8, 1987, indicated that appellant had fallen and injured his right ribs.

Records from a VAMC in Mountain Home, Tennessee, dated September 11, 1987, show that appellant gave a history of having had frostbite 25 years ago on two separate occasions. He was also diagnosed with venous insufficiency, peripheral vascular disease, seizure disorder, and hypertension.

On July 20, 1988, the rating board denied service connection for a seizure disorder, headaches, peripheral vascular disease, and venous insufficiency. The rating board found that there was no evidence to indicate that these conditions were related to an automobile accident which occurred during appellant's time in the service. Service connection for frozen feet was denied as the condition was not shown in the evidence of record.

Appellant then submitted a statement detailing his January 14, 1957, accident, and relating that he still had headaches and that his shoulder, neck, and lower back had never healed. He submitted a statement about his frostbite. He stated that he remembered going on guard duty for 8–10 hours without shoes or boots. He stated that he was going to have his legs taken off below the knee.

Appellant submitted a letter from Dr. Hendrix dated August 29, 1988. Dr. Hendrix stated that he had seen appellant that day and that appellant was suffering from frostbite of the feet, and that appellant had vascular and neurological damage. For medication, the doctor recommended Lubriderm (a topical lotion). Dr. Hendrix did not state what type of examination he had performed to determine that appellant had vascular and neurological damage.

Appellant filed another VA Form 1–9 on May 2, 1988. He submitted a medical note pertaining to sensorineural hearing loss. By decision dated March 1, 1989, the BVA denied appellant's claim for service connection for residuals of a motor vehicle accident and frostbite of the feet. The BVA decision did not address hearing loss.

In March 1989, appellant indicated through correspondence to the VA that he wished to amend his claim to include entitlement to service connection for hearing loss. Appellant sought to reopen his claim on March 22, 1989. Attached to his request were a 1963 medical statement and signed release forms authorizing the VA to obtain private medical records dating from the 1960s and 1970s. He did not note on these forms why these records would be of importance. On May 22, 1989, the rating board decided not to reopen appellant's claim because these signed forms for the release of medical evidence where the records were destroyed in the fire would not constitute new and material evidence. Appellant filed his Notice of Disagreement in June 1989. An SOC was prepared. On April 11, 1990, the BVA denied his appeal for service connection for residuals of a motor vehicle accident, frostbite of the feet, and hearing loss. *Frank E. White*, BVA 90–____ (Apr. 11, 1990).

Appellant filed an appeal to this Court. Appellant argued that the Secretary had breached his statutory duty to assist under 38 U.S.C. § 5107(a) by not helping appellant obtain the requested medical records. The Court held that appellant was entitled to have the Secretary assist him in obtaining records sought, and, if they were found to be new and material evidence, to have his claim reopened and readjudicated. The Court remanded the case to the BVA for appropriate action. *White*, 1 Vet.App. 519.

On December 31, 1991, the BVA remanded the case to the agency of original jurisdiction with instructions to request copies of treatment records from individuals and hospitals previously identified by appellant as being potentially relevant to his claim. Specifically, the remand was for the following action:

The RO should contact Dr. John T. Purvis of Knoxville, Tennessee; Dr. Paul E. Spray of Oak Ridge, Tennessee; Dr. Stephen Notelson [sic] of Knoxville, Tennessee; Dr. S.G. McNeeley of Norris, Tennessee; Dr. George E. Fillmore of Knoxville, Tennessee; Dr. Richard P. Miethe of Kokomo, Indiana; the Oak Ridge Hospital of Oak Ridge, Tennessee; St. Mary's Hospital of Knoxville, Tennessee; and the Ft. Sanders Hospital of Knoxville, Tennessee, and request that they provide photocopies of any and all treatment records concerning [appellant] which pertain or may pertain to residuals of a January 1957 motor vehicle accident, residuals of frostbitten feet and/or a hearing loss.

*Frank E. White*, BVA 91–___ (Dec. 31, 1991).

The VARO began development of the case in February 1992. On April 28, 1992, the rating board issued a confirmed rating decision. Specifically, the rating board relied on the following evidence in making its decision:

(1) Dr. John Purvis had no record of having treated appellant.

(2) Dr. Spray reported a medical history commencing with an August 6, 1974, motor vehicle accident in which appellant reported neck, back, and left knee pain. At that time, appellant reported no prior history of back or neck trouble. A followup entry on December 15, 1976, noted that in Dr. Tittle's opinion, "the patient has no permanent partial disability as a result of an orthopedic problem. I feel that he can perform gainful employment if he is so motivated."

(3) Dr. Natelson had no record of having treated appellant. Dr. Natelson had referred appellant to the Fort Sanders Neurosurgical Clinic. However, Fort Sanders Neurosurgical Clinic also had no success in locating records.

(4) Dr. McNeeley reported a brief course of treatment on February 2, 1978, for recurrent back strain. Dr. Gallivan had no record of treatment during the period from 1958 to 1965, although there is a reference to treatment for "back strain" in 1961.

(5) Dr. Fillmore did not reply.

(6) Dr. Miethke reported that he had given appellant an employment physical examination on September 8, 1966. Dr. Miethke found a showing of high frequency hearing loss at that time.

(7) Oak Ridge Hospital reported a hospital admission on November 1, 1978, for dislocated right carpal lunate (right wrist).

(8) Fort Sanders Regional Medical Center provided a record of an admission in 1992, but had no records predating 1992.

(9) St. Mary's Hospital did not respond to the inquiry. However, appellant submitted x-rays taken at St. Mary's in 1986 which did not reveal any bone or joint abnormality. Appellant also submitted records which indicated that appellant was released from the hospital after a stretch injury to his shoulder.

(10) A September 1966 Delco Electronics employment examination which reported sensorineural hearing loss in the left ear. The examination did not reveal any complaints of ringing in the ears or history of serious head injury or loss of consciousness.

In its April 28, 1992, decision, the rating board determined that the evidence did not establish any finding that would warrant a change in the prior denial of service connection for the residuals of a motor vehicle accident, frostbite of the feet, or hearing loss. Appellant was informed of this decision by a May 7, 1992, letter with an attached Supplemental SOC (SSOC). Appellant responded to the SSOC. The VARO issued a second SSOC. On July 20, 1992, appellant's case was certified for appeal to the Board. By letters dated October 16, 1992, and November 20, 1992, appellant withdrew the issue of entitlement to service connection for residuals of frostbite.

On January 28, 1993, the BVA denied entitlement to service connection for residuals of a motor vehicle accident and hearing loss. Treatment records from all physicians and facilities identified by appellant had been sought. The Board found that evidence submitted since the March 1989 decision was new and material evidence and therefore reopened both claims. The Board determined that the newly submitted evidence: (1) covered a time period closer to appellant's ser-

vice than the evidence which was previously of record, (2) bore directly on the matter under review, and (3) if accepted as true, might change the outcome of the claims.

Regarding the claim for the residuals of a motor vehicle accident, the Board noted that it had previously denied entitlement to service connection in March 1989. The Board determined that additional evidence submitted since that time indicated medical treatment several years following service discharge for a disability which the veteran had related to an in-service motor vehicle accident. The Board made a factual finding that appellant was involved in a motor vehicle accident in January 1957, during appellant's active military service, but that the extent of injuries was unknown. The Board also found his SMRs were unavailable. The Board determined that after service, the first probative evidence of a chronic disability which appellant attributed to the in-service accident arose in the mid–1970s, too far removed in time from military service to conclude that any currently existing back, neck, shoulder, or head disorder is related to any incident in service.

The Board found that the available information revealed a history of treatment in 1961 for low back strain; however, such disability was not shown to be related to military service. The Board found it significant that he was noted to have responded well to conservative treatment and had been working regularly until 1966. The Board also noted that in 1966 he was seen for left shoulder and arm pain, the result of a lifting injury.

The Board determined that traumatic arthritis did not develop as a result of an in-service injury since a May 1966 (a number of years following the asserted injury), radiographic examination of the left shoulder and cervical spine was normal. The Board cited two medical treatises for the proposition that initial arthritic changes occur over many months, rather than over many years.

The Board concluded that his current complaints developed many years following service discharge and were in large part the result of post-service injuries. This conclusion was based on the evidence that in appel-

lant's 1974 automobile accident, he injured his neck, back, and left arm and subsequently developed headaches. Following the accident, a radiographic examination of the entire spine was normal. Furthermore, no previous history of back or neck pain had been previously presented.

With respect to the claim for hearing loss, the Board found that the evidence before them did not probatively establish the onset of hearing loss until 1966, which was too far removed in time to attribute it to military service.

## II. ANALYSIS

### A. Residuals of a Motor Vehicle Accident

■■■ The determination whether evidence is new and material is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). Under 38 U.S.C. § 7104(b), a final decision by the BVA on a given claim "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." The exception to this rule is 38 U.S.C. § 5108, which provides that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." "New" evidence is that which is not merely cumulative of other evidence of record. *Cox v. Brown,* 5 Vet.App. 95, 98 (1993). "Material" evidence is that which is relevant to and probative of the issue at hand, and which is of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both old and new, would change the outcome. *Id.*

■■■ Denial of appellant's claim for entitlement to service connection for residuals of a motor vehicle accident was the subject of a prior final March 1, 1989, BVA decision, *Frank E. White,* BVA 88–49183 (Mar. 1, 1989). Appellant has presented "new" evidence, in that some of the evidence was not before the BVA at the time it issued its

March 1, 1989, decision. This "new" evidence, however, is not "material," because it does not show a connection between appellant's current condition and his military service. The fact that this evidence was closer in time to appellant's service, the principal reason given by the Board for finding it material, is a non sequitur because this "new" evidence shows no service connection. Therefore, there simply is no possibility that it could change the outcome of the previous final decision. *See Colvin, supra.*

██ Where the Board has improperly reopened a claim, this Court has concluded that "the appropriate remedy is not to affirm the BVA decision denying the claim on the merits, but to vacate the decision and thereby reestablish the finality of the previous denial." *McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993). Accordingly, the January 28, 1993, BVA decision will be vacated as to the issue of entitlement to service connection for residuals of a motor vehicle accident because appellant's claim has not been reopened since it was the subject of a final decision in a March 1, 1989, BVA decision.

██ One other matter as to this part of the claim merits discussion. The Board, in its discussion of reasons or bases for its decision to deny entitlement to service connection for residuals of a motor vehicle accident, cited two medical treatises. It is not clear from a reading of the record whether either of these medical treatises was ever provided to appellant. It was error not to do so. This Court has held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it.

*Thurber v. Brown,* 5 Vet.App. 119, 126 (1993). However, the Court has taken "due account of the rule of prejudicial error" as required by 38 U.S.C. § 7261(b). *See Yabut v. Brown,* 6 Vet.App. 79, 84 (1993). Where, as in this case, there was no new and material evidence and the claim should not have been reopened, the error is harmless and does not require remand.

## B. Hearing Loss

██ The Board's determinations regarding whether appellant's hearing loss was incurred in or aggravated by military service and the degree of impairment are findings of fact. *Stegman v. Derwinski,* 3 Vet.App. 228 (1992). In order to set aside a finding of fact, this Court must conclude that it is "clearly erroneous." *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 52. "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Id.* at 53.

There is no evidence which provides a nexus between appellant's current bilateral hearing loss and his military service. The sensorineural hearing loss reported in September 1966 was for the left ear, not the right. There is no medical evidence to support appellant's contention that he has suffered from a right ear hearing loss for the past 30 years. Therefore, the Board's decision as to denial of service connection for hearing loss has a plausible basis in the record and is affirmed.

## III. CONCLUSION

The decision of the Board denying entitlement to service connection for residuals of a motor vehicle accident is VACATED because the claim has not been reopened since it was finally denied in a March 1, 1989, BVA decision. The decision of the Board denying entitlement to service connection for hearing loss is AFFIRMED.