Paul R. JUNSTROM, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 93–210.

United States Court of Veterans Appeals.

March 1, 1994.

Paul R. Junstrom, Jr., pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a November 17, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to service connection for gonorrhea. A timely appeal to this Court followed. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). On July 23, 1993, appellant filed an informal brief. On September 22, 1993, the Secretary filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings pending a ruling on this motion. For the reasons discussed below, the Court will affirm the BVA decision.

## I. BACKGROUND

Appellant entered active duty in the United States Army on October 17, 1969 (R. at 14, 19, 46), and was discharged on January 12, 1970, after the Army determined that he had a preexisting back condition at the time of his entry into service which had rendered him unqualified for duty (R. at 14, 32, 35–36, 46–47). There was no indication of gonorrhea at the time of appellant's preinduction physical examination conducted on October 7, 1969. R. at 16–19. On October 20, 1969, appellant reported to sick call with complaints of groin pain, penile drip, and dysuria of three days' duration. R. at 21. At that time, appellant tested positive for gonorrhea and was treated. R. at 20–21. No residuals of gonorrhea were reported during appellant's separation examination conducted one month later or during a VA medical examination conducted in March 1970. R. at 31–32, 49–54. Service medical records indicate that appellant "had a gonococcic infection just prior to entry on active duty" and that "[h]e was treated by the Army with negative sequelae." R. at 35.

In February 1991, appellant filed claims for service connection for gonorrhea and for residuals of gonorrhea, including a nervous condition and arthritis. R. at 78, 81. In a VA Form 21–4138 (STATEMENT IN SUPPORT OF CLAIM), appellant noted that he was undergoing psychiatric treatment at the VA Medical Center in Pittsburgh, Pennsylvania, for a chronic mental condition which he attributed to military service. R. at 78. He claimed that he "began suffering from a depression after contracting venereal disease in service." *Id.*

In a rating decision dated April 24, 1991, a VA Regional Office (RO) denied appellant's claim for service connection for gonorrhea; the RO determined that the gonorrhea had preexisted service and was not aggravated by service. R. at 87–88. The RO also denied appellant's claim for secondary service connection for arthritis on the grounds that there was no evidence that appellant had been treated for arthritis during service and because he had not been granted service connection for gonorrhea. *Id.* Further, the RO denied appellant's claim for secondary service connection for a nervous condition on the basis that the claim previously had been denied in an unappealed decision dated October 1987 and appellant had not presented new and material evidence to reopen the claim. R. at 88, 90.

Appellant filed a Notice of Disagreement with the RO's denial of service connection for gonorrhea and for secondary service connection for a nervous condition in May 1991. R. at 93. A Statement of the Case (SOC) was supplied to him in July 1991, and he perfected an appeal to the BVA later that month. R. at 95–101. Appellant appeared at a personal hearing before the RO in December 1991. R. at 103–08. During the hearing, appellant's representative argued that appellant was being treated for a nervous condition and chronic anxiety disorder which were causally related to appellant's venereal disease during service. R. at 105. The representative asserted that the presumption of soundness should have been applied in appellant's case, *see* 38 U.S.C. § 1111, and averred that appellant did not have gonorrhea at the

time of his enlistment examination and that he had not contracted the disease until after his entrance on active duty. *Id.* The representative also stated that "the condition of the venereal disease does manifest itself from time to time." *Id.* Appellant testified that while he was out on pass during his first night in service, he met a prostitute and had sex with her, and that several days later he sought treatment for gonorrhea. R. at 105–07.

In a hearing officer's decision dated January 9, 1992, an RO hearing officer denied appellant's claim. As a basis for the decision, the hearing officer noted that, according to the MERCK MANUAL (15th ed. 1987) [hereinafter MERCK], the incubation period for gonorrhea is from two to 14 days and the usual onset of symptoms are, first, mild discomfort in the urethra, followed a few hours later by dysuria and purulent discharge. R. at 110. The hearing officer determined:

> Based on a review of all the evidence of record, no change is warranted in the denial of entitlement to service connection for gonorrhea. Although the veteran was treated for gonorrhea three days following his entrance on active duty, he indicated that he had already been symptomatic for three days. Since the incubation period for gonorrhea is from two to 14 days, it would appear that he was infected prior to entrance on active duty. In addition, it was noted on November 21, 1969 that he had a gonococcic infection just prior to entry on active duty. In any event, the condition appears to have been acute in nature as there is no evidence of sequelae following treatment with penicillin in October 1969. There is no indication of any residuals of that infection at the time of his medical board examination or at any time since discharge from service. In the absence of a chronic disability resulting from the infection, service connection could not be granted even if the infection was incurred while on active duty.

R. at 111. In its November 1992 decision currently before this Court for review, the BVA denied service connection for gonorrhea, finding, inter alia, that (1) the disease existed prior to service and only became symptomatic during service and (2) it was treated adequately and there was no increase in the disability during service. R. at 5. With respect to appellant's claim for secondary service connection for a psychiatric disorder as a residual of gonorrhea, the BVA noted that because the claim had not been fully developed, it had been referred to the RO for further development in light of appellant's contentions and testimony. R. at 4. Accordingly, that claim is not currently before this Court for review. A timely appeal to this Court followed.

## II. ANALYSIS

■ Under 38 U.S.C. § 1111, a veteran is afforded a presumption of sound condition upon entry into service, except for any defects noted at the time of examination for entry into service. That presumption can be overcome by clear and unmistakable evidence that a disability existed prior to service and was not aggravated by such service. *See* 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b) (1993); *Monroe v. Brown*, 4 Vet.App. 513, 515 (1993); *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991); *Green v. Derwinski*, 1 Vet.App. 320, 322 (1991). In *Bagby*, this Court set forth the standard of review of a BVA determination that the presumption of soundness has been rebutted:

> While the underlying determination may be factual—in this case, for example, the BVA could have determined as a factual matter that appellant was treated prior to service—whether those facts are sufficient to satisfy the statutory requirement that clear and unmistakable evidence be shown is a legal determination subject to *de novo* review.

*Id.,* 1 Vet.App. at 227 (citations omitted). Accordingly, this Court is required to make an independent determination of whether the facts found by the BVA satisfactorily rebut the presumption of soundness. *Id.*

■ Here, as noted above, gonorrhea was not detected during appellant's preinduction examination and, therefore, the presumption of sound condition under 38 U.S.C. § 1111 has attached to appellant's claim. The BVA determined that the presumption was rebutted by clear and unmistakable evi-

dence that the gonorrhea existed before service. R. at 5. We agree.

VA's regulation dealing with preservice disabilities noted in service provides that "[t]here are medical principles so universally recognized as to constitute fact (clear and unmistakable proof), and when in accordance with these principles existence of a disability prior to service is established, no additional or confirmatory evidence is necessary." 38 C.F.R. § 3.303(c) (1993). As an example, the regulation notes that "[c]onditions of an infectious nature are to be considered with regard to the circumstances of the infection and if manifested in less than the respective incubation periods after reporting for duty, they will be held to have preexisted service." *Id.*

Applying the requirements of § 3.303(c) to this case, although appellant's preinduction examination did not reveal any indication of gonorrhea, SMRs indicate that he "had a gonococcic infection just prior to entry on active duty" and the record reveals that on October 20, 1969, three days after appellant entered service, he reported to sick call with complaints of groin pain, penile drip, and dysuria of three days' duration. Subsequent testing led to a diagnosis of gonorrhea and a course of treatment was prescribed. As the BVA noted in its decision, according to MERCK, the incubation period of gonorrhea is from two to 14 days. *Id.* at 232; R. at 6. Further, according to D. SMITH, GENERAL UROLOGY, 215 (10th ed. 1981), the first symptoms of gonorrhea is a purulent urethral discharge which typically appears 2 to 10 days after initial exposure. R. at 6–7. Applying these medical facts to the case at hand, the Board correctly found that "gonorrhea which was first symptomatic on the day the veteran entered active service must have been contracted at least 2 days before." R. at 7. The BVA also considered appellant's testimony in support of his contention that he had contracted gonorrhea immediately after his entrance into service, but determined that his testimony, "based on memory many years after the infection, does not approach the probative weight of the medical records made at the time of the actual treatment or of the medical treatises cited above." *Id.;*

*see Wilson v. Derwinski,* 2 Vet.App. 614, 618 (1992) (citing *Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991)) ("The BVA has a duty to assess the credibility and weight to be given the evidence."); *Smith v. Derwinski,* 1 Vet. App. 235, 237–38 (1991) (the determination of the credibility of the veteran's testimony is a function of the BVA). Upon reviewing the evidence of record de novo, the Court concludes, as a matter of law, that there is clear and unmistakable evidence that appellant entered service with preexisting gonorrhea.

 We must turn our attention next to whether appellant's preexisting condition was aggravated in service. Section 1153 of title 38 of the United States Code provides that aggravation will be established by an increase in disability during service absent a specific finding that the increase was due to the natural progress of the disease. 38 U.S.C. § 1153; *see also* 38 C.F.R. § 3.306(a) (1993); *Browder v. Brown,* 5 Vet.App. 268, 270 (1993). The determination of whether a preexisting disability was aggravated by service is a question of fact. *Green,* 1 Vet.App. at 322 (citing *Hunt v. Derwinski,* 1 Vet.App. 292, 293 (1991)). The function of this Court in reviewing findings of fact by the BVA is limited to deciding whether or not such factual decisions constituted clear error. *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990); *Sanders v. Derwinski,* 1 Vet.App. 88 (1990).

> In practical terms, under the "clearly erroneous" rule, this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a "plausible" basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them.

*Gilbert,* 1 Vet.App. at 53.

Here, the BVA properly considered and applied the statutory and regulatory law regarding aggravation of preexisting disabilities and noted:

> The first symptom of gonorrhea is a purulent urethral discharge which usually appears 2 to 10 days after sexual exposure. General Urology, 215. Therefore, the penile drip and dysuria reported by the veteran reflected the natural progress of the

disease. The disease was treated. There were no further genitourinary symptoms reported during service. When the veteran was examined for separation from service, in November 1969, test results and the genitourinary system were normal. The genitourinary system was again noted to be normal on the initial VA examination in March 1970. Thereafter, many years passed without gonorrhea or any residuals being diagnosed. Clearly, the gonorrhea did not increase in severity during service. We must therefore conclude that the preexisting gonorrhea was not aggravated by service.

R. at 7–8 (underscoring in original). There is a plausible basis for the BVA's determination that appellant's preexisting gonorrhea did not increase in severity during service.

The Court notes that the BVA relied upon two medical texts, MERCK and GENERAL UROLOGY, in support of its decision. Since the BVA decision on appeal to this Court was decided, this Court issued its opinion in *Thurber v. Brown*, 5 Vet.App. 119 (1993), in which the Court discussed the due process requirements regarding citations to medical texts or treatises in BVA decisions. In *Thurber*, the Court held that where the BVA relies, in rendering a decision, upon any evidence developed or obtained by it subsequent to the issuance of its most recent SOC or Supplemental SOC with respect to such claim, the BVA must provide the veteran with reasonable notice of the evidence and of the reliance proposed to be placed on it, as well as a reasonable opportunity for the veteran to respond to that evidence. *Id.* at 126.

■ Here, the BVA relied upon MERCK (for the proposition that the incubation period of gonorrhea is from 2 to 14 days, R. at 6) in its decision and the record reflects that appellant's service representative was aware of this medical text and, in fact, referred to it in his statements to the BVA, and apparently to the RO as well. *See* R. at 119. Therefore, appellant had reasonable notice of the medical text and the reliance to be placed upon it by the BVA, as well as a reasonable opportunity to respond to that evidence. The BVA's reliance upon that text did not run afoul of this Court's holding in *Thurber*. Further,

although the BVA failed to provide appellant with notice of its intended reliance on the second citation to GENERAL UROLOGY (for the proposition that the penile drip and dysuria reported by appellant on his third day of service "reflected the natural progress of the disease," R. at 7), discussion of the natural progress under 38 U.S.C. § 1153 was not necessary to the holding that no aggravation of the preexisting gonorrhea was shown. That is because the BVA's findings (which we have held were not "clearly erroneous") that "no further genitourinary symptoms [were] reported during service" and that the genitourinary system was "normal" "[w]hen the veteran was examined for separation," R. at 7, were reasons or bases that were dispositive as to the conclusion that the preexisting condition had not undergone an "increase in disability during service" under § 1153 and, therefore, could not have been aggravated during service. *See Hunt*, 1 Vet.App. at 297 (temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered aggravation unless the underlying condition, as contrasted to symptoms, is worsened). The information contained in the medical text was relevant but nondispositive, given the other reasons or bases provided by the BVA in support of its determination. Moreover, appellant did not argue that any error by the BVA in this regard was prejudicial to his interests. Accordingly, any error committed by the BVA in failing to provide appellant with notice of that treatise prior to the issuance of its decision was harmless. *See Yabut v. Brown*, 6 Vet.App. 79, 85–87 (1993) (where plausible bases in record for factual determinations of the Board, failure of Board to provide appellant with notice and opportunity to respond to medical treatises superfluously cited in decision was harmless error); 38 U.S.C. § 7261(b) (requiring Court to take into account the rule of prejudicial error).

## III. CONCLUSION

Upon consideration of the record and the filings of the parties, the Court holds that appellant has not demonstrated that the Board committed either factual or legal error which would warrant reversal or remand.

*Gilbert*, 1 Vet.App. at 52–57; *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States*, 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert, supra.* Accordingly, the November 17, 1992, decision of the BVA is AFFIRMED.