**Gyrlin L. EDENFIELD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1263.

United States Court of Veterans Appeals.

Argued Sept. 20, 1994.

Decided Nov. 1, 1995.

Reconsideration Denied Dec. 11, 1995.

Webb M. Jones, Houston, TX, was on the brief, for appellant.

R. Randall Campbell, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel, and John C. Winkfield, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, MANKIN, HOLDAWAY, IVERS, and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court.

HOLDAWAY, Judge:

The appellant appeals a September 4, 1992, Board of Veterans' Appeals (BVA or Board) decision that denied entitlement to service connection for syphilis. Record (R.) at 4–9. The Court finds that the appellant did not submit a well-grounded claim, and will affirm the Board's decision. On May 10, 1994, we ordered this matter consolidated with *Smith v. Brown*, (92–1263). That order is hereby revoked and the Court's opinion in *Smith* will be issued separately.

## I. Factual Background

The appellant served on active duty in the United States Army from May 1953 to April 1955. R. at 14, 148. The report of his February 1953 preinduction examination revealed no pertinent abnormalities. R. at 16–17. According to service medical records (SMRs), in June 1953 he complained of "R[ight] L[ower] Q[uadrant] pain," but a physical examination was negative for any defect. R. at 25. A June 22, 1954, SMR entry stated a diagnosis of "URI [upper respiratory infection] [c]ommon cold with sore throat" and indicated that the appellant was returned to duty on that date. R. at 27. A July 15, 1954, SMR entry stated that on that date the appellant had been diagnosed with "[n]ew urethritis, acute due to gonococcus," treated with penicillin, and returned to duty. R. at 27–28. The report of the appellant's April 1955 separation examination was negative for any disabilities. R. at 31–32.

In May 1971, the appellant filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO)

an application for non-service-connected pension in connection with a myocardial infarction he had suffered earlier that month. With his application he submitted a May 1971 private treatment record which, inter alia, described his external genitalia as being "[w]ithin normal limits." R. at 52. In December 1984, the appellant underwent a VA medical examination in connection with his claim for service connection for injuries related to a claimed November 1953 jeep accident in Seoul, Korea. The report described the appellant's genitourinary system as follows: "Prostate appears to be somewhat enlarged. No abnormal masses noted. No rectal mass felt. Further evaluation was accomplished in Houston, Texas." R. at 125. The examining physician stated that the appellant "has had evaluation through Dr. Marshall [an orthopedic surgeon] and previously through Dr. George Kerr." R. at 126. The examination report provides no relevant diagnosis. R. at 123–27.

In June 1987, the appellant submitted to the RO a copy of an April 1955 "Special Orders" extract from Fort Jackson, South Carolina. The extract stated that the appellant was to be discharged by "reason of physical disability," but it did not state the nature of the disability. R. at 138.

In July 1989, the appellant apparently submitted to the RO a copy of a June 1989 report prepared by the National Personnel Records Center (NPRC) from hospital admission card data created by the U.S. Army Office of the Surgeon General. *See* R. at 141. The report stated that the appellant had been treated in Seoul in July 1954 for treatment of "[u]rethritis, acute, due to gonococcus," had "not [been] admitted to [a] medical treatment facility," and had been released to duty following treatment. *Ibid.* The report also stated "[N]o entry made," and that the cause of death or disability separation was "[u]nknown or cannot be determined." *Ibid.*

In a September 1989 rating decision, the RO denied service connection for urethritis; the decision stated: "SMR[s] of record show that on 7/15/54, the vet[eran] was treated for acute urethritis. No further treatment is shown and no defects are noted on the dis-charge exam ... [Service connection] for urethritis is denied as evidence shows condition was resolved in service without residual disabilities." R. at 145.

In January 1991, the appellant filed with the RO a claim for service connection for "clinical syphilis." R. at 154. The appellant stated that he had been treated for that condition in June and July 1954 while stationed in Korea. *Ibid.* He provided the names and addresses of three physicians who, he stated, had treated him for clinical syphilis in 1960, 1971, and 1975, and of two lay persons who, he also stated, had knowledge of his having had syphilis since 1954 and 1966, respectively. R. at 155. In February 1991, the RO received two VA Statement in Support of Claim forms completed by the appellant. R. at 163, 176–77. On the first form, the appellant asserted that he had contracted clinical syphilis while on active duty in Korea in 1954, that he had not received proper treatment at that time due to improper diagnosis, and that he had suffered from that condition for the past 31 years. R. at 176–77. To the second form he attached an extract from an unidentified medical treatise apparently describing studies and treatment recommendations for gonococcal infections and syphilis made by the U.S. Public Health Service in the 1940s and 1950s. R. at 163. The appellant also attached duplicates of the July 1954 SMRs, which diagnosed "[n]ew urethritis, acute due to gonococcus" (R. at 164–65), and the June 1989 NPRC report (R. at 166).

In February 1991, the appellant submitted a June 1989 "Informal Information Reply" from the NPRC which apparently responded to an inquiry from the appellant. R. at 167. The NPRC reply stated that "[c]opies of requested military ... medical records are attached" but also stated that "[t]he record needed to answer your inquiry is not in our files." *Ibid.* The reply further stated that if the record had been at the NPRC on July 12, 1973, it may have been destroyed by fire on that date and that, although alternate record sources were available to reconstruct service record data lost in the fire, "complete ... medical records cannot be reconstructed." *Ibid.* The appellant also submitted a Janu-

ary 1991 rehabilitation evaluation from a private hospital. The evaluation stated a diagnosis of "[n]eurosyphilis" and, under the heading "[p]ertinent [history]," stated: "No H[istory] On Chart: p[atien]t/spouse report p[atien]t has had the neurosyphilis × 20 years and has chronic m[usculo]s[keletal] spasm/pain [in] both [lower extremities]." R. at 173. Finally, the appellant also submitted an unsigned and unidentified casework form, dated January 1991, indicating, inter alia, that in 1954 he had suffered "throat swelling" and a "common cold" and had been treated with penicillin, and that in 1990 he had experienced "neuro syphillis [sic]/spinal cord prob[lem]." R. at 158.

In an April 1991 decision denying service connection for clinical syphilis, the RO stated that "careful review of the veteran's [SMRs] does not reveal any complaint of, treatment for[,] or diagnosis of syphilis while in service." R. at 182. In July 1991, he filed a Notice of Disagreement. R. at 188. In August 1991, he filed a VA claim for aid and attendance. R. at 190. In support of that claim, he submitted a June 1991 statement by Dr. Abu–Nassar, a private physician, who stated that the appellant suffered from "[u]ncontrollable and unexpected seizures," was housebound, and needed aid and attendance with the ordinary activities of daily living. R. at 191. Dr. Abu–Nassar indicated that the "[m]ajor [d]iagnosis" was "[history] of [n]eurosyphilis" and also diagnosed "[c]entral [n]ervous [s]ystem [d]isease"; he further noted: "R[ule out] tertiary suphilis [sic] [with] possible early tabes dorsalis." *Ibid.* (Tabes dorsalis is "a syphilitic disorder that involves the dorsal horns of the spinal cord and the sensory nerve trunks." WEBSTER'S MEDICAL DESK DICTIONARY 700 (1986) [hereinafter WEBSTER'S].) In September 1991, the RO denied the appellant's claim for special monthly pension and issued a Statement of the Case (SOC) in connection with the syphilis claim. R. at 199–207. In October 1991, the appellant filed a VA Form 1–9 (Substantive Appeal to the BVA) in which he requested consideration of "all ... lay and medical evidence concerning the inception[,] development[,] and manifestations of ... 'Treponema Pallidum' (Syphilis)." R. at 209–10.

(Treponema pallidum is the bacterium that causes syphilis. WEBSTER'S at 669, 729.)

In a December 1991 statement, the appellant's representative noted the appellant's in-service treatment for urethritis due to gonococcus and stated:

[M]edical sources available to us advises [sic] that this latter is the organism causing gonorrhea. These medical sources go on to advise that if gonorrhea is contacted [sic] that exposure to syphilis can occur at the same time and that the treatment for gonorrhea may be sufficient to delay the signs of syphilis and be insufficient to rid the patient of the spirochetes. Syphilis can then develop and be unnoticed.

R. at 215–16. The representative also asserted that the appellant's January 1991 claim form, and the February 1991 Statement in Support of Claim forms, had demonstrated "continuity of treatment ... for 1960, 1966, 1971, 1975 and 1990 ... for syphilis." R. at 216. In a written presentation submitted to the Board in May 1992, the appellant's representative asserted that the appellant's SMRs were "incomplete" and stated:

There are no [SMRs] available that show how the [July 1954 in-service] diagnosis of urethritis due to gonococcus was established. There are no blood test reports available, and since the veteran was treated at an aid station, [it] is doubtful that any blood test was performed, and that a current diagnosis could have been given, but was made based on information provided by the veteran and on examination.

R. at 225–26. Further, the representative, noting Dr. Abu–Nassar's June 1991 diagnoses, which included "[rule out] tertiary suphilis [sic] [with] possible early tabes dorsalis," stated as follows:

The [CECIL TEXTBOOK OF MEDICINE], 19th ed., on page 1765, under tabes dorsalis states the onset of the disease is usually delayed, often 20 to 30 years after initial onset infection. Also, in the same reference book, page 2175, under tabes dorsales it states the term describes a myeloneuro-

pathy that characteristically occurs 10 to 20 years after primary infection....

R. at 226.

In the September 4, 1992, decision here on appeal, the Board determined, at the outset of its analysis, that because the appellant's claim was "plausible" he had "submitted a well-grounded claim within the meaning of 38 U.S.C. § 5107(a)." R. at 6. The Board then noted that, notwithstanding the July 1954 in-service diagnosis of new urethritis due to gonococcus, the appellant's April 1955 discharge examination was negative for any physical abnormalities and further noted that the first clinical documentation of syphilis was the January 1991 private-hospital record. *Ibid.* The Board in its decision cited authority contained in a medical treatise, HARRISON'S PRINCIPLES OF INTERNAL MEDICINE. The Board concluded that the SMRs contained "no indication that the veteran had any of the symptomatology included in the initial primary and secondary stages of syphilis," nor was there any evidence of a misdiagnosis of gonorrhea. R. at 7. Accordingly, the Board denied the appellant's claim.

## II. Analysis

### A.

■ Pursuant to 38 U.S.C. § 5107(a), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Such a claim need not be conclusive, but it must be accompanied by supporting evidence sufficient to justify a belief by a fair and impartial individual that the claim is plausible. *See Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is ordinarily required to fulfill the well-grounded-claim requirement of section 5107(a); where, a factual issue can be decided without expert evidence, lay testimony by itself may suffice. *See Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit v.*

*Brown,* 5 Vet.App. 91, 93 (1993); *Magana v. Brown,* 7 Vet.App. 224, 227–28 (1994); *see also Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992)). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grottveit, supra.*

■ The appellant contends that the in-service diagnoses of new urethritis due to gonococcus was mistaken and that his in-service symptomatology indicated syphilis. However, he has failed to submit medical evidence showing that his current syphilis was related in any way to his in-service urethritis, or that the in-service diagnosis was mistaken. His own assertions and those of his representative are insufficient to establish a well-grounded claim because neither the veteran nor his representative is competent to render an opinion requiring medical knowledge. *See Espiritu,* 2 Vet.App. at 495. The medical evidence submitted in support of the claim, specifically the January 1991 private hospital record, and the June 1991 statement from Dr. Abu–Nassar, although probative of a present diagnosis of neurosyphilis, is not probative of any link between that disability and the veteran's service and thus does not render the claim well grounded. *See Heuer, Magana,* and *Grottveit, all supra.* Further, neither the veteran's representative's reference to the CECIL TEXTBOOK OF MEDICINE, nor the unidentified treatise abstract submitted by the veteran establishes any connection between the veteran's particular condition and his service.

The Court holds, contrary to the BVA, that the appellant failed to submit a well-grounded claim.

### B.

The sole remaining issue, and the one for which en banc consideration was ordered, is to resolve an apparent conflict between panels of this Court as to the appropriate disposition by this Court when the Board erroneously concludes that a claim is well grounded and then proceeds to consider the merits and disallows the claim. In *Grottveit v. Brown,* a panel of this Court held that where the claim was not well grounded "in contemplation of

law ... there was no claim to adjudicate on the merits and the BVA and the RO [had] erred in not initially denying the claim as one that was not well grounded." *Grottveit*, 5 Vet.App. at 93. The Court concluded that "it is more appropriate to recognize the nullity of the prior [underlying] decisions and allow [the] appellant to begin, if he can, on a clean slate." *Ibid.* The effect of the "clean slate" was to ensure that the Board's decision would not be considered a disallowance under 38 U.S.C. § 7104(b) and § 5108 in which case new and material evidence would be needed before the appellant could "reopen" the claim. The Court accordingly *vacated* the BVA decision and remanded the matter with directions to vacate the underlying RO decision.

Prior to *Grottveit*, other panels of this Court had simply *affirmed* the BVA's denial of an appellant's claim under circumstances where the claim had been found well grounded by the BVA, but not well grounded by this Court. *See Tirpak, supra.* The Court will now resolve this conflict by holding that the appropriate remedy is to affirm rather than vacate a BVA decision disallowing a claim on the merits where the Court finds the claim to be not well grounded. *See Layno v. Brown,* 6 Vet.App. 465, 472 (1994) (Steinberg, J., concurring in part and dissenting in part) (referencing other separate opinions).

■ We begin our analysis by noting that even assuming that the policy grounds alluded to in *Grottveit* as the rationale for the holding (making a nullity of the prior decisions so the appellant may have a future right to a "clean slate") may be valid, they are just that, policy reasons. As a matter of law, a claim that is not well grounded is nevertheless a claim. *But see Sarmiento v. Brown,* 7 Vet.App. 80, 84 (1994). A claimant who files such a claim, attaching *such evidence as he has,* is undeniably a claimant entitled to a disposition of his claim. Moreover, a decision disposing of that claim is subject to a Notice of Disagreement (NOD) and the internal VA appeal process triggered by an NOD. We can find no statute or regulation that would render a disallowance of a claim, whether it be directly on the merits or on the basis of being not well

grounded, to be a nullity. *Cf. Robinette v. Brown,* 8 Vet.App. 69, 78–79 (1995) (where application is "incomplete" under 38 U.S.C. § 5103(a), VA should not disallow claim but rather should notify claimant to provide evidence needed to "complete" application).

The plain meaning of 38 U.S.C. § 5107(a) is that a person who submits a not-well-grounded claim *is* a claimant. *See Sarmiento,* 7 Vet.App. at 88 (Kramer, J., concurring). This conclusion follows logically from the section's second sentence reference to "such a claimant" in describing one who has submitted a well-grounded claim as described in its first sentence; the adjective "such" clearly implies that a "person" described in the first sentence is *also* a "claimant" even if that person does not submit a well-grounded claim. That is, the use of "such" shows that there are claimants other than those who submit well-grounded claims. Indeed, there is no mystery about what it takes to become a "claimant" for VA benefits. The provisions of 38 U.S.C. §§ 5101–02 preceding § 5107 require a person claiming VA benefits to file a claim on an application form provided by the Secretary, and § 5103(a) then specifically refers to situations where "a claimant's application for [VA] benefits ... is incomplete [or] complete" and requires the Secretary when the application is incomplete to "notify *the claimant* [who submitted the incomplete application] of the evidence necessary to complete the application." 38 U.S.C. § 5103(a) (emphasis added); *see Robinette,* 8 Vet.App. at 77–81.

■ The situation regarding § 5107(a) is quite unlike the superficially similar situation of a claimant who attempts to reopen a previously disallowed claim but does not offer new and material evidence. In this latter situation, the law specifically precludes reopening and allowance of the claim. *See* 38 U.S.C. §§ 5108, 7104(b). There is no similar statutory preclusion, express or implied, as to consideration of claims that are not well grounded. Significantly, the *Grottveit* opinion contains no analysis explaining why such claims or claims adjudications are legal "nullities." Not-well-grounded claims are nevertheless claims. When they are not well grounded, they are not allowed, that is, *dis*

allowed. Indeed, from one point of view one can logically conclude that a disallowance of a claim as not well grounded amounts to a disallowance of the claim on the merits (such as they may be) based on insufficiency of evidence.

■ Assuming, arguendo, that it was error to express a disallowance in terms of the merits where the claim is, in fact and law, not well grounded, the Court should nonetheless affirm the Board's "erroneous" disallowance of the claim on the merits unless to do so would prejudice the appellant. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *compare Yabut v. Brown,* 6 Vet.App. 79, 85 (1993) (error prejudicial), *with Junstrom v. Brown,* 6 Vet. App. 264, 268 (1994) (error not prejudicial); *see also Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet. App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet.App. 251, 253–54 (1991). It may be argued, based on *Grottveit,* that a claimant may incur possible and potential prejudice from any such error (disallowance on the merits) in a future submission of the same claim. This "prejudice" to the claimant stems, so the argument goes, from not having a "clean slate" when he attempts to file a new claim based on the same general facts. It is true that a veteran, who elects to file a claim without sufficient evidence to "ground" it, and consequently has it disallowed, will, should he attempt to file a claim based on the same facts, have to produce new and material evidence before the adjudicators have authority to reopen and allow the previously disallowed claim. *See* 38 U.S.C. §§ 5108, 7104(b).

■ A well-grounded claim has been defined by this Court as one that is "possible" or "plausible," and "capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. at 81; *Tirpak v. Derwinski,* 2 Vet.App. at 610–11. A claim is neither possible, plausible, or, to state it another way, plausibly possible unless the evidence attached to it would create a possibility of its allowance. The Court has defined "new and material" evidence as that which is of such significance that, if believed, it would, when considered with "old" evidence, create a reasonable "possibili-

ty" that the previously disallowed claim would now be allowed. *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *see also* 38 C.F.R. § 3.156 (1994). Obviously new evidence that does not create at least the possibility of changing the result could not be of such significance as to justify what would be a superfluous reopening. *See Colvin, supra.* Each standard is therefore based on possibility, one reasonable, one plausible, that the supporting evidence attached to the claim would permit its allowance.

The difference, if any, as we have defined it in our case law, between the evidence required to "well ground" a claim and that required for reopening a previously disallowed claim because of "new and material" evidence appears to be of slight degree. It is, in a nut shell, the difference between a "plausible" possibility and a "reasonable" possibility. It is very difficult and highly speculative, to see how the appellant, should he in fact obtain new evidence and reopen his disallowed claim, can suffer future prejudice. The quality of evidence he would need to well ground his claim or to reopen it would seem to be, as a practical matter, nearly the same, regardless of dicta in any of the Court's case law that posited a significant qualitative difference between the evidence required to well ground an original claim and that necessary to reopen a previously disallowed claim. *E.g., Robinette v. Brown,* 8 Vet.App. at 76. We do not rule out that in future cases it may be necessary to draw distinctions however slight they may be. However, we can only do so in a case with concrete facts that raise the issue and not in a case, such as the one sub judice, that compels the Court to deal with abstract concepts divorced from such facts.

## C.

■ Nonprejudicial error also results where the VA has erroneously found a claim well grounded but then fails to comply with the fair process requirements enunciated in *Thurber v. Brown,* 5 Vet.App. 119, 126 (1993). In *Thurber,* the Court held:

[B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the

issuance of the most recent SOC or [Supplemental] SOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it. If, in the course of developing or obtaining or attempting to so develop or obtain such evidence, the BVA becomes aware of any evidence favorable to the claimant, it shall provide the claimant with the reasonable notice of and a reasonable opportunity to respond to the favorable evidence, and shall in its decision provide reasons or bases for its findings with respect to that evidence.

*Ibid.*

In the present case, it appears that the Board did not provide the appellant with notice of its intent to rely upon the HARRISON medical treatise. The Board's material reliance in its decision upon a medical treatise to which it had not given the appellant an opportunity to respond violated, in a way that would generally be considered prejudicial, the procedural requirements set forth in *Thurber.* The Court holds, however, that, because the appellant failed to submit a well-grounded claim, the Board's *Thurber* violation was not, ipso facto, prejudicial. *See* 38 U.S.C. § 7261(b); *see also White (Frank) v. Brown,* 6 Vet.App. 247, 252 (1994) (where claimant fails to submit new and material evidence to reopen claim under 38 U.S.C. § 5108, Board's *Thurber* error is harmless and does not require remand); *Yabut,* 6 Vet. App. at 85 ("failure of the BVA to provide appellant with [*Thurber*-required] notice and an opportunity to respond to the medical treatises superfluously cited in its decision constitutes harmless error").

### III. Conclusion

For the foregoing reasons, pursuant to 38 U.S.C. § 7261(b), the September 1992 BVA decision is AFFIRMED AS TO THE DISALLOWANCE OF THE CLAIM.