Citation Nr: 1132146 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 96-41 559 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Whether new and material evidence has been received sufficient to reopen the previously denied claim of entitlement to service connection for a skin disorder, to include as secondary to an undiagnosed illness; and if so, whether service connection is warranted.

2. Entitlement to service connection for a left shoulder disability, to include as due to undiagnosed illness. 


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Christopher Maynard, Counsel


INTRODUCTION

The Veteran had active service from December 1965 to January 1967 and from September 1990 to July 1991, including service in Southwest Asia in support of Operations Desert Shield and Desert Storm. The Veteran also had multiple periods of active and inactive duty training in the Army Reserves. 

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a March 1996 decision by the RO which, in part, denied service connection for a bilateral shoulder disability to include as due to undiagnosed illness. A hearing at the RO was held in March 1997. The Board remanded the claim for a bilateral shoulder disability to the RO in April 1999 and June 2004. 

In August 2006, the Board, in part, denied service connection for a bilateral shoulder disability, and the Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (hereinafter, "the Court"). In a July 2009 Memorandum Decision, the Court vacated the August 2006 Board decision and remanded the appeal to address several substantive matters which were not adequately explained in the Board decision. The Memorandum Decision further found that during the pendency of the aforementioned appeal, the Veteran raised the additional petition to reopen his previously denied claim of entitlement to service connection for a skin disorder. The Court noted that while the Board lacked jurisdiction to adjudicate the reopened claim sua sponte, the Veteran had expressed a clear desire to reopen the claim, and directed the Secretary of VA to adjudicate this issue.




The Board remanded the appeal for additional development in January 2010. 

By rating action in May 2011, the RO granted service connection for a left shoulder disability, and assigned a 10 percent evaluation; effective from October 27, 1994, the date of receipt of the Veteran's original claim. 38 C.F.R. § 3.400(b)(2). Accordingly, this issue is no longer in appellate status and will not be addressed in this decision. 

The issue of whether new and material evidence has been received sufficient to reopen a previously denied claim of entitlement to service connection for a skin disorder is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. The Veteran will be notified if further action on his part is required.


FINDINGS OF FACT

1. The competent evidence of record does not demonstrate that the Veteran has a currently diagnosed right shoulder disability.

2. The preponderance of the evidence is against a finding that the Veteran currently suffers from a right shoulder disability, to include as secondary to an undiagnosed illness, as the result of a disease or injury incurred in actice duty service.


CONCLUSION OF LAW

A left shoulder disability was not incurred in or aggravated by the Veteran's active duty service, nor may it be presumed to have been incurred in or aggravated by such service, nor is it due to an undiagnosed illness or other qualifying chronic disability, pursuant to 38 U.S.C. § 1117. 38 U.S.C.A. §§ 1110, 1112, 1113, 1117, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.317 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran). 

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. The Veterans Claims Assistance Act of 2000 (VCAA)

With respect to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2010).


Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

Prior to and following the initial adjudication of the Veteran's claim, letters dated in December 2002, May 2003, June 2003, July 2004, and March 2010 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1) (2010); Quartuccio, at 187. Since the Board has concluded that the preponderance of the evidence is against the claim for service connection, any questions as to the appropriate disability rating or effective date to be assigned are rendered moot, and no further notice is needed. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

All the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 553 (1996); see also 38 C.F.R. § 20.1102 (2010) (harmless error). In view of the foregoing, the Board finds that the Veteran was notified and aware of the evidence needed to substantiate his claim, as well as the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify. 

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records, VA medical records, and Social Security Administration records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim.
The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. The record indicates that the Veteran participated in a VA examination in August 2010 and the results from that examination have been included in the claims file for review. The examination involved a review of the claims file, a thorough examination of the Veteran, and an opinion that was supported by sufficient rationale. Therefore, the Board finds that the examination is adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has substantially complied with the duty to obtain the requisite medical information necessary to make a decision on the Veteran's claim.

Additionally, the Board finds there has been substantial compliance with its January 2010 remand directives with respect to this issue. The Board notes that the Court has recently noted that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand.) The record indicates that the AMC scheduled the Veteran for a medical examination and he attended that examination. The AMC later issued a supplemental statement of the case (SSOC). Based on the foregoing, the Board finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the Veteran the right to compliance with its remand orders). Therefore, in light of the foregoing, the Board will proceed to review and decide the claim based on the evidence that is of record consistent with 38 C.F.R. § 3.655 (2010).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007). Importantly, the Board notes that the appellant is represented in this appeal. See Overton v. Nicholson, 20 Vet. App. 427, 438 (2006). The Veteran has submitted argument and evidence in support of the appeal. Based on the foregoing, the Board finds that the Veteran has had a meaningful opportunity to participate in the adjudication of his claim such that the essential fairness of the adjudication is not affected.

II. The Merits of the Claim

The Veteran contends that he currently suffers from a right shoulder disability that is the result of his time in active duty service, to include as secondary to an undiagnosed illness. The Board disagrees.

Governing Law and Regulations

Basic entitlement of veterans to compensation for service-connected disabilities derives from 38 U.S.C.A. § 1131, which provides, in pertinent part, for compensation to a "veteran" for "disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during other than a period of war." 38 U.S.C.A. § 1131 (emphasis added); see also 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Status as a "veteran" is one of the five elements of a claim for service-connection benefits. See D'Amico v. West, F.3d 2000 at 9, (Fed. Cir. 2000); Collaro v. West, 136 F.3d 1304 (Fed. Cir. 1998). 

The term "veteran" is defined, in relevant part, as "a person who served in the active military, naval, or air service." 38 U.S.C.A. § 101(2); see also 38 C.F.R. § 3.1(d). In turn, the term "active military, naval, or air service" is defined to include active duty, any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty. 38 U.S.C.A. § 101(24) (emphasis added); see also 38 C.F.R. § 3.6(a).


Consequently, in order to establish basic eligibility for veterans' benefits based on a period of active duty for training, the appellant must show that he was disabled during a period of active duty for training due to a disease or injury incurred or aggravated in the line of duty. See Mercado-Martinez v. West, 11 Vet. App. 415, 419 (1998); Paulson v. Brown, 7 Vet. App. 466, 469-70 (1995); Biggins v. Derwinski, 1 Vet. App. 474, 478 (1991); see also Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991) (disability means impairment in earning capacity resulting from disease or injury and their related conditions).

Generally, service connection may be granted for any disability resulting from injury suffered or disease contracted in line of duty, or for aggravation in service of a pre-existing injury or disease. 38 U.S.C.A. §§ 1110, 1131. Service connection may be established by demonstrating that the disability was first manifested during service and has continued since service to the present time or by showing that a disability which pre-existed service was aggravated during service. Service connection may be granted for any disease diagnosed after discharge from service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303.

A pre-existing injury or disease will be considered to have been aggravated by active service where there is an increase in disability during such service, unless clear and unmistakable evidence shows that the increase in disability is due to the natural progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306.

A pre-existing disease or injury will be presumed to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability. See Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002); 38 C.F.R. § 3.306(a). Evidence of the veteran being asymptomatic on entry into service, with an exacerbation of symptoms during service, does not constitute evidence of aggravation. See Green v. Derwinski, 1 Vet. App. 320, 323 (1991). If the disorder becomes worse during service and then improves due to in-service treatment to the point that it was no more disabling than it was at entrance into service, the disorder is not presumed to have been aggravated by service. See Verdon v. Brown, 8 Vet. App. 529 (1996).

When a chronic disease such as arthritis becomes manifest to a degree of 10 percent within one year of a veteran's discharge from service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the veteran's period of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

A determination of service connection requires a finding of the existence of a current disability and an etiologic relationship between that disability and an injury or disease incurred in service. See Edenfield v. Brown, 8 Vet. App. 384, 388 (1995); Caluza v. Brown, 7 Vet. App. 498, 506 (1995). Absent any independent supporting clinical evidence from a physician or other medical professional, "[t]he veteran's own statements expressing his belief that his disabilities are service connected . . . are not probative." See Espiritu v. Derwinski, 2 Vet. App. 492, 495 (1992).

For veterans who served in the Southwest Asia theater of operations during the Persian Gulf War, service connection may also be established for chronic disability that cannot be attributed to a known clinical diagnosis (undiagnosed illness) or for a medically unexplained multisymptom illness (e.g., chronic fatigue syndrome, fibromyalgia, or irritable bowel syndrome). 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. Objective indications of chronic disability resulting from undiagnosed illness must be manifest to a degree of 10 percent either during active military service in Southwest Asia or no later than December 31, 2011. 38 C.F.R. § 3.317(a). Signs or symptoms that may be manifestations of undiagnosed illness include joint pain. 38 C.F.R. § 3.317(b).

Analysis

The Veteran's service treatment records from his first period of active service, from December 1965 to January 1967, include an extensive history of two pre-service automobile accidents in December 1964 and May 1965. A statement from a private physician who treated the Veteran after the December 1964 accident shows that the Veteran had pain in both shoulders, but no objective findings of injury to the shoulders and no diagnosis involving the shoulders. The Veteran's own report on the medical history portion of his induction examination shows that while he had injured his back, neck, head, and right hand during both accidents, the only sequella he had at the time of the September 1965 induction examination was frequent headaches. According to the medical history reports of his September 1965 induction examination and his October 1967 separation examination, he reported having had no problems with his right shoulder. The remainder of the service treatment records reflecting his first period of active service are entirely negative for injury, complaints, or treatment involving the right shoulder.

Thus, the Veteran is simply mistaken in his assertion that he injured his right shoulder during an automobile accident while on active duty, as the record demonstrates that both automobile accidents occurred prior to his active service. Any residuals of these accidents are thus entirely unrelated to his military service and would not warrant a grant of service connection. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303.

Reports of periodic medical examinations conducted in conjunction with his reserve service between 1967 and 1990 reflect that while the Veteran faithfully reported experiencing a head injury during an automobile accident in 1965, he also continued to deny any shoulder problems. Upon multiple clinical examinations, his upper extremities and musculoskeletal system were deemed to have been normal throughout this time period. The report of a May 1991 active duty examination reflects that he had reinjured his low back, but he reported having no problems involving his shoulders. The report of a May 1992 examination, performed nearly a year following his discharge from his second period of active duty, shows normal upper extremities upon examination, and again his own report of having had no problems with a painful or trick shoulder. In the absence of any injury or complaint involving the right shoulder during service, any theory of entitlement to service connection on the basis of aggravation of any residual disability from the pre-service automobile accidents cannot be logically entertained. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306.
Post-service (post 1992) medical evidence pertaining to the Veteran's right shoulder can be summarized briefly. Within voluminous VA treatment reports, there is no indication of complaints or treatment for shoulder pain or a diagnosed shoulder problem. All X-ray studies of record were interpreted as showing normal bony structures in the shoulders. Upon three VA examinations, the Veteran was not diagnosed with a right shoulder disability. 

Thus, the evidence of record does not contain any written record of an in-service injury or event involving the Veteran's right shoulder, either during active duty or during active duty for training. Furthermore, throughout the veteran's active and reserve service, his upper extremities have been clinically determined to have been normal and he himself identified no problems involving his right shoulder during service. 

The Veteran's assertion that his right shoulder pain is related to heavy lifting during his Desert Shield and Storm service has not been corroborated by any medical professional and he himself does not possess the requisite expertise to render a competent medical opinion on the matter. Generally, lay persons such as the Veteran, who are ostensibly untrained in medicine can provide personal accounts of symptomatology, but cannot provide evidence constituting a medical conclusion, such as an opinion as to the medical characteristics of symptoms or the etiology of a disease. For the most part, medical testimony must be provided by someone qualified as an expert by knowledge, skill, experience, training, or education. See Layno v. Brown, 5 Vet. App. 465, 469 (1994); Espiritu v. Derwinski, 2 Vet. App. 492, 494-95 (1992).

In the absence of arthritis involving the right shoulder, service connection for the chronic disease of arthritis may not be presumed under law. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

In order to be considered for service connection, a claimant must first have a disability. See Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992); Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998) (service connection may not be granted unless a current disability exists). In the absence of a diagnosed right shoulder disorder, direct service connection may not be granted. See also Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997). Further, the Board notes that pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted. See Sanchez- Benitez v. West, 13 Vet. App. 282 (1999), appeal dismissed in part, and vacated and remanded in part sub nom. See Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed. Cir. 2001). 

With regard to the Veteran's claim that his right shoulder pain could be a manifestation of an undiagnosed illness related to his Persian Gulf service, the Board finds that this theory of entitlement fails as well. To the extent that the Veteran has right shoulder pain for which a medical explanation has not been found, such a disease entity must be linked by a medical professional to an undiagnosed illness. Such is not the case here. All of the medical examiners have concluded the Veteran does not have a right shoulder disability. Therefore, the Board must conclude that the evidence does not support the Veteran's claim for service connection for an undiagnosed illness manifested by right shoulder pain. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317.

The preponderance of the evidence is against the Veteran's claim for service connection for a right shoulder disability and the appeal must be denied.


ORDER

Entitlement to service connection for a right shoulder disability, to include as secondary to an undiagnosed illness, is denied.






 (CONTINUED ON NEXT PAGE)
REMAND

After a thorough review of the Veteran's claims file, the Board has determined that additional evidentiary development is necessary prior to the adjudication of his petition to reopen the previously denied claim of entitlement to service connection for a skin disability, to include as secondary to an undiagnosed illness.

The AMC was instructed to provide the Veteran with VCAA notice concerning a reopened claim under 38 U.S.C.A. § 5103 and 38 C.F.R. § 3.159, including notice of why his claim was previously denied and of the evidence necessary to reopen the claim. The AMC was also instructed to take all appropriate action and to adjudicate the claim. While the Veteran was provided with general notice of VA's duty to assist in the development of his claim by letter dated in March 2010, he was not advised of the basis for the prior denial or of the evidence necessary to reopen his claim under the holding in Kent v. Nicholson, 20 Vet. App. 1 (2006). Thus, the Board finds that the notification letter was legally insufficient. Id. 

Furthermore, the AMC's disposition of the Veteran's request to reopen his claim was wholly inadequate. The AMC denied the claim on the basis that the Veteran did not respond to the March 2010 notice letter, and concluded that no new and material evidence had been submitted. However, the record showed that the Veteran did respond to the VCAA notice letter in April 2010, and referred to a September 2004 VA examination report which, parenthetically, was associated with the claims file subsequent to the prior Board decision. Thus, the evidentiary record included additional pertinent evidence which the AMC did not considered. Moreover, the Board notes that the AMC's inclusion of this issue in a SSOC was legally incorrect. 

Specifically, VA Regulations provide, in part, that in no case will an SSOC be used to announce decisions by the agency of original jurisdiction on issues not previously addressed in an SOC, or to respond to a notice of disagreement on a newly appealed issue that was not addressed in an SOC. 38 C.F.R. § 19.31(a) (2010). Here, the RO did not provide the Veteran with adequate VCAA notice under the holding in Kent or properly adjudicate the claim to reopen service connection for a skin disorder. Thus, the AMC's disposition of this issue was improper. 

In light of the discussion above, and to ensure full compliance with due process requirements, it is the decision of the Board that further development is necessary prior to appellate review. Accordingly, the case is REMANDED for the following action:

1. The AMC should send the Veteran a letter providing the notice required under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), which includes an explanation as to the information or evidence needed to reopen the previously denied claim for a skin disorder. The VCAA notice should include specific notice of why the prior finally-decided claim was previously denied and what constitutes new and material evidence for the purpose of reopening his claim. See Kent v. Nicholson, 20 Vet. App. 1 (2006). 

2. After the requested development has been completed, the AMC should readjudicate the claim. If the benefit sought on appeal remains denied and the Veteran submits a timely notice of disagreement, the Veteran and his representative should be furnished a statement of the case, and provided appropriate notice of the Veteran's appellate rights.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2002 & Supp. 2010).



______________________________________________
K. A. KENNERLY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs