**Richard M. BROCK, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 95–444.

United States Court of Veterans Appeals.

March 21, 1997.

Richard M. Brock, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Amy S. Gordon, Washington, DC, were on the pleading for the appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

STEINBERG, Judge, filed the opinion of the Court. FARLEY, Judge, filed a concurring opinion.

STEINBERG, Judge:

The pro se appellant, Vietnam veteran Richard M. Brock, appeals a May 3, 1995, decision of the Board of Veterans' Appeals (Board or BVA) denying service connection for disabilities claimed as residuals of exposure to the defoliant Agent Orange during the Vietnam conflict. The BVA decision determined that he had not met the initial burden of submitting a well-grounded claim. Record (R.) at 9. The appellant has filed an informal brief and reply brief. The Secretary has filed a motion for summary affirmance. Summary disposition is not appropriate here because the outcome is "reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25 (1990). For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The veteran served on active duty in the U.S. Army from February 1964 to February 1966, with a tour of approximately four months in Vietnam. R. at 49. His induction medical examination report showed him to be healthy with no pertinent medical abnormalities. R. at 21–22. His service medical records related no relevant illnesses or injuries except for several complaints of pain in the flank and groin areas, on one occasion connected to lifting, and one complaint of "flu[-]like" symptoms. R. at 25–40. The groin pains were tentatively diagnosed as "psycho-physiological"; there is no record of the "consultation" that the attending physician had noted he would order. R. at 38–39. The veteran's discharge examination report and report of medical history at discharge each noted no medical abnormalities. R. at 41–47.

A New York Department of Social Services Medical Report for Determination of Disability form, dated May 1981, listed a diagnosis of "severe nervous disorder". R. at 75. An August 1982 BVA decision denied

Department of Veterans Affairs (VA) service-connected disability compensation for a "nervous condition", concluding that "[t]he available evidence is not sufficient to render a decision on the merits" and stating that "numerous [VA] examinations have been scheduled and the veteran has failed to appear for each examination" and that he had provided only "purported reports of medical examinations". R. at 79–80.

In October 1984, the veteran filed with a VA regional office (RO) an application for compensation or VA non-service-connected pension for a "nervous condition" and a "blood disorder" arising from exposure to Agent Orange. R. at 51–54. A November 1984 VA Report of Medical Examination form (Form 21–2545), apparently signed by three doctors and a reviewing officer, contained a list of medical conditions and stated a diagnosis of, inter alia, "acute psychosis"; the report showed a conclusion under "DIAGNOSIS" of: "Trace of TCDD dioxin. Patient is disable [sic] to work or take care of self". R. at 66. The report, under medical history related by examinee, also listed VA facilities in Tuskegee, Alabama, and Washington, D.C., and a physician in Atlanta, Georgia, as hospitals or doctors from which he had received treatment for psychosis and soft-tissue sarcoma from January 1966 through December 1979, from December 1979 through June of 1983, and from June 1983 through November 1984. R. at 63. The names of the physicians are very difficult to decipher. Under musculoskeletal system, this report states the following, inter alia: "[I]nfection related to Agent Orange causing musculoskeletal system breakdown in tissues .... [illegible]." R. at 65. (It is unclear whether these words relate to something that the patient was asserting or the examiner found.) The report goes on:

> [N]eed assistance in the control of movement due to swelling knees ... weakness due to a disease ridden skeletal system.... Dryed [sic] skin 1/2 inch thick covering feet, blistering scars around toes right & left feet, wrapping required, daily saline solution use for aiding the blistering

scars area; not able to walk at all. Use wheel chair.

R. at 65.

A November 1984 VA medical form listed under "ILLNESS OR INJURY FOR WHICH PATIENT RECEIVED TREATMENT": "soft[-]tissue sarcoma, nervous disorder, porphyria lutahae [sic] tarda liver disease, acute psychosis[,] memory loss, illness affecting patient['s] nervous system, musculo[-]skeletal [system,] and epilepsy attack weekly". R. at 61. (Porphyria cutanea tarda, associated with liver disease, is characterized by "cutaneous photosensitivity" that produces a number of skin disorders, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1335 (28th ed. 1994) [hereinafter DORLAND'S].) Under the subheading "WAS ILLNESS OR INJURY CONNECTED WITH EMPLOYMENT" is recorded: "Agent Orange Chemicals[,] 2,4–D and 2,4,5T." Ibid. The form appears to have been filled out on "11/26/84" and signed by the veteran and also appears to bear the signature of a doctor with a "date signed" of "11/30/84". Ibid. In December 1984, an RO decision concluded that there was insufficient evidence for rating purposes because the veteran had "failed to prosecute claim" and "did not complete exam". R. at 68.

In October 1990, he submitted a new application for compensation, claiming disability—including hepatobiliary ailments, immunological abnormalities, gastrointestinal ulcer, altered lipid metabolism, and soft-tissue sarcoma—from exposure to Agent Orange. R. at 83–86. ("Hepatobiliary" refers to the liver and the bile or biliary ducts. DORLAND'S at 754.). In the application, he claimed to have been treated for immunological abnormalities and altered lipid metabolism while in an infirmary in Vietnam, and he listed the VA hospital in New York City and a VA hospital in Alabama as locations where he had received treatment for these ailments at various times between 1969 and 1990. R. at 84–85. In a December 1990 statement in support of claim, he reported two locations where records of his treatment for Agent–Orange–related illnesses would be available: The "[VA] Regional Office Medical Facility located at site 7th Avenue" in New York City and Metropolitan Hospital in New York City. R.

at 101. Also attached to this statement is an undated form, labelled "DIVISION OF DISABILITY DETERMINATION", without a space for a doctor's signature but apparently bearing one, which lists a variety of bodily systems in one column (*e.g.*, stomach, blood pressure, stool, and heart) and, apparently, diagnostic impressions in the parallel column; that form records the veteran as "treated for soft[-]tissue Sarcoma for exposed [sic] to Agent Orange", and further records, in the spaces parallel to "stool", "stomach", and "blood pressure", symptoms of bloody stool, inability to hold down food, and controlled high blood pressure. R. at 102. The finding is noted as: "Patient is chronic disable[d,] unable to work". *Ibid.*

In February 1991, the RO scheduled a medical examination. R. at 106. In June 1991, after the veteran failed to appear for the examination, the RO denied service connection, explaining that "[t]he veteran's claim for service connection due to Agent Orange exposure cannot be properly resolved wihtout [sic] a current examination. . . ." R. at 109–11. The veteran filed a Notice of Disagreement in July 1991, requesting review before a travelling section of the BVA. R. at 113.

While review was pending, the Metropolitan Hospital responded to a VA request for records as to the veteran with a September 1991 letter stating: "[P]atient is not known to Metropolitan Hospital." R. at 127. In September 1991, the veteran filed a VA Form 1–9 (Substantive Appeal to BVA). R. at 131–32. He stated on the form: "I do not see where taking a physical exam at a VA facility will help my case." R. at 132. In January 1992, the BVA remanded the case for reconsideration under a revised regulation (then 38 C.F.R. § 3.311a) relating to Agent Orange exposure. R. at 148. A May 1994 RO decision on remand denied service connection for soft-tissue sarcoma and gastrointestinal disorders, stating that the VA October 1979 and November 1984 examinations were "psychiatric" and that the remainder of the treatment records were negative for a diagnosis of soft-tissue sarcoma or a chronic gastrointestinal disorder. R. at 167. The RO also noted that the veteran had failed to report for scheduled VA examinations "on numerous occasions." *Ibid.*

The veteran appealed to the BVA in June 1994, asking for a hearing before the BVA in Washington, D.C. R. at 180–82. With his appeal, he included an undated form letter from the Clerk of the United States District Court for the Eastern District of New York, which had the veteran's name filled in and stated: "The Agent Orange Veteran Payment Program has received and reviewed your application for disability payments and found that you meet the criteria that the Court established for eligibility. Accordingly, your application for disability payments has been approved." R. at 186. An accompanying letter from the Program, dated April 1990, noted that he had previously received benefits under the Program and was scheduled to continue receiving benefits until December 1994, if he remained totally disabled. R. at 187. He also included an undated form from the Social Security Administration (SSA) with his name and address typed in, stating: "We have found that you meet the medical requirements for disability benefits." R. at 188. The BVA scheduled a hearing for April 1995 (R. at 203–04), but the veteran wrote in March 1995 that he would be unable to travel to Washington because of "a severe hardship brought on by a breakdown in my support status." (R. at 208).

In the May 1995 BVA decision here on appeal, the Board held that the veteran had failed to submit a well-grounded claim because there was no medical evidence of a current disability (R. at 9, 14); the Board thus dismissed the claim and vacated the June 1991 RO decision (R. at 16). The Board also noted that the RO had not addressed the veteran's qualification for VA non-service-connected pension, and it referred that issue to the RO. R. at 7.

A timely appeal to this Court followed. The Court notes that it may not consider and has not considered documents that the appellant attached to his informal brief that were not included in the record before the Board. *See* 38 U.S.C. § 7252(b) ("Review in the Court shall be on the record of proceedings before the Secretary and the Board"); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990).

## II. Analysis

■ Service connection for VA disability compensation purposes will be awarded to a veteran who served on active duty during a period of war or during a post–1946 peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases that were initially manifested, generally to a degree of 10% or more, within a specified presumption period after separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1116, 1131, 1133(a), 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1996).

■ When a disease is first diagnosed after service, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service or by evidence that a presumption period applied. *See Combee v. Brown*, 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection . . . entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *see also* 38 U.S.C. § 1116 (establishing presumptive service connection for certain diseases manifested to a degree of 10% or more disability in Vietnam veterans exposed to certain herbicides, including Agent Orange, during service in Vietnam); 38 C.F.R. §§ 3.307(a), (b), (d), 3.309(e) (1996); *McCay v. Brown*, 9 Vet.App. 183, 186–87 (1996), *aff'd*, 106 F.3d 1577 (1997). A service-connection claim generally must be accompanied by evidence that establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski*, 3 Vet. App. 223, 225 (1992) (absent "proof of a present disability[,] there can be no valid claim"); *Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992); *see also Degmetich v. Brown*, 104 F.3d 1328, 1331–32 (1997) (implicitly rejecting appellant's contention that *Rabideau* and *Brammer,* both *supra,* and *Caluza, infra,* be overruled).

### A. Well Groundedness of Claims

As an initial matter, section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990).

■ A well-grounded service-connection claim generally requires medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between an in-service injury or disease and a current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (1996) (table); *see also Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)); *Degmetich, Brammer,* and *Rabideau,* all *supra.* For the purpose of determining whether a claim is well grounded, the credibility of the evidence is presumed. *See Robinette v. Brown,* 8 Vet.App. 69, 75 (1995). A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by this Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet.App. 136, 139 (1994); *Grottveit, supra.*

*1. Agent–Orange–related claims in general.* The veteran raised to the RO claims for Agent–Orange–related gastrointestinal disorders, soft-tissue sarcoma, hepatobiliary tract illnesses, immunological abnormalities, and altered lipid metabolism. R. at 83–86. The BVA decision referred generally to its review of a "claim for service connection for disabilities claimed as residuals of exposure to herbicide agents used in Vietnam" and found no well-grounded Agent–Orange–related claims. R. at 9. The BVA based its decision upon its finding that the veteran had supplied "no medical evidence showing a

present disability with a causal connection to exposure to herbicides in service." R. at 14. The BVA concluded both (1) "that the objective evidence in this case does not indicate any disabilities with a relationship to exposure to herbicides during military service", and (2) that "[t]he appellant's claim is not plausible because of the absence of any objective evidence of a present disability, and the claim, therefore, is not well[ ]grounded." *Ibid.*

"Agent Orange, which contains trace elements of the toxic by-product dioxin, was purchased by the United States government from [several] chemical companies and sprayed on various areas in South Vietnam on orders of United States military commanders. The spraying generally was intended to defoliate areas . . . ." *In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 149 (2d Cir.1987). The spraying of Agent Orange during the Vietnam conflict has been the subject of numerous law suits by Vietnam veterans claiming that exposure to Agent Orange during their service in Vietnam has caused serious illnesses in them and their offspring. *See, e.g., In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987) (setting the parameters for a multi-million-dollar veteran-compensation program, the Agent Orange Veteran Payment Program, funded by manufacturers of Agent Orange); *In re Agent Orange Product Liability Litigation,* 818 F.2d 194, 199 (2d Cir.1987) (denying recovery against the Federal government on the grounds that *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), "prohibits the judiciary from imposing liability upon the United States for injuries to servicemen that 'arise out of or are in the course of activity incident to service' "); *Nehmer v. United States Veterans' Admin.,* 712 F.Supp. 1404 (N.D.Cal. 1989) (invalidating portions of Secretary's regulations relating to Agent–Orange–related claims that imposed too strict a test for establishing service connection and failed to give benefit of doubt); *LeFevre v. Secretary, Dept. of Veterans Affairs,* 66 F.3d 1191 (Fed. Cir.1995) (upholding Secretary's rulemaking determination not to establish presumptions of Agent–Orange–related service connection

for prostate, liver, and nose cancers). Agent Orange has also been the subject of several federal laws designed to provide compensation benefits for veterans who claim disabilities that may be related to Agent Orange exposure during the Vietnam conflict. Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (1984), as substantively amended by the Agent Orange Act of 1991, Pub.L. No. 102–4 (codified in large part at 38 U.S.C. § 1116). Regulations implementing current law are codified at 38 C.F.R. §§ 3.307(a)(6) and (d) and 3.309(e).

■ The appellant contends that the BVA failed to take account of the notice of his approval for SSA disability payments and his enrollment in the Agent Orange Veteran Payment Program. Brief (Br.) at 1; *see* R. at 185–88. For the reasons set forth below, none of the documents relating to these awards is sufficient to make any of his claims well grounded.

The undated SSA document (R. at 188) submitted by the appellant, although perhaps probative of a present disability of some sort, neither identifies the disability or disabilities for which the veteran has allegedly been rated by SSA nor connects any such disability or disabilities to his service; it provides no information regarding the disabilities—soft-tissue sarcoma and other Agent–Orange–related ailments—for which he brought his VA claim.

Neither does the undated notice of acceptance in the Agent Orange Veteran Payment Program (R. at 186) nor the letter from that Program concerning payments (R. at 187) address the medical conditions at issue before the BVA. Moreover, although enrollment in that Program might seem to be probative of the veteran's possession of an Agent–Orange–related disability, the Court is aware of no information suggesting that receipt of payments under that Program— established by court settlement of a class-action, product-liability suit brought by Vietnam veterans against manufacturers of Agent Orange—turns on any finding that a veteran has an Agent–Orange–related ailment. In fact, the U.S. District Court for

the Eastern District of New York described the Program as follows:

> Vietnam veterans exposed to Agent Orange who suffered total (100%) disabilities arising from non-traumatic, non-accidental and non-self-inflicted causes [are] eligible for payments [citation omitted]. The definition of total disability was taken from the Social Security Act, and Social Security Administration determinations of disability would be taken as evidence of disability for the Agent Orange Payment Program.

*In re "Agent Orange" Product Liability Litigation,* 689 F.Supp. 1250, 1257–58 (E.D.N.Y. 1988). The standards required for receipt of compensation under the Agent Orange Veteran Payment Program thus appear very different from those required to establish a service-connected disability under chapter 11 of title 38, U.S.Code. Even if the Court were to conclude that these Program documents are *prima facie* evidence that the veteran is receiving payments under that Program, there is no indication that the receipt of benefits thereunder is premised upon a present disability with connection to exposure to Agent Orange or to military service; the Program eligibility requirements quite clearly appear to be simply service, exposure to Agent Orange, and total disability.

 *2. Soft-tissue-sarcoma claim.* As noted earlier, a well-grounded service-connection claim generally requires, inter alia, competent evidence of in-service incurrence or aggravation of a disease or injury, and medical evidence of a nexus between an in-service injury or disease (or the aggravation thereof) and a current disability (if one is shown by the evidence). As to the in-service-incurrence and medical-nexus prongs of the well-grounded-claim requirement, no direct evidence is required as to a soft-tissue-sarcoma claim in the case of a Vietnam veteran. All that is required is competent evidence of current disability (the third prong); for such a veteran with sufficient evidence of a current soft-tissue sarcoma, the statutory and regulatory open-ended service-connection presumption as to a disease arising at any time after service, as is the case for Agent–Orange–related diseases such as soft-

tissue sarcoma pursuant to 38 U.S.C. § 1116(a)(1)(A) and (2)(B) and 38 C.F.R. §§ 3.307(a)(6) and 3.309(e), fulfills the requirements for evidence of both service incurrence and medical nexus. By contrast, in *Caluza,* 7 Vet.App. at 507, this Court held that the reduced evidentiary burden provided for combat veterans by 38 U.S.C. § 1154(b) related only to the question of service *incurrence,* "that is, what happened then—not the questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required." *See Libertine v. Brown,* 9 Vet.App. 521, 524 (1996). The applicable law in the instant case is substantively different from that at issue in *Caluza* in that Agent Orange law expressly provides for the triggering of a rebuttable presumption of service connection when a listed disease is diagnosed (to a degree of disability of 10% or more) "at any time" after service; in other words, such presumption of service connection of such a currently diagnosed listed Agent–Orange–related disease, in this case, soft-tissue sarcoma, in a veteran who otherwise satisfied the provisions of regulation §§ 3.307(a) and (d) and 3.309(e), would always carry with it the presumption of nexus to service as well. Hence, plausible medical evidence of the existence of a current presumptively service-connected disease with an open-ended presumption period is sufficient to present a well-grounded service-connection claim as to that disease.

 The appellant contends that the BVA failed to account for the 1984 Veterans' Dioxin and Radiation Exposure Compensation Standards Act (Br. at 2), but, as noted above, this law was substantively amended by the Agent Orange Act of 1991 and was, in effect, superseded by the latter Act. The statute affords to a soft-tissue sarcoma arising in a veteran who served in the Vietnam conflict a rebuttable presumption of service connection if the disease, in the words of the regulation, "has become manifest to a degree of 10 percent or more at any time after service", 38 C.F.R. § 3.307(a)(6)(ii) (1996). *See* 38 U.S.C. §§ 1116(a)(1), (2)(B); *see also* 38 C.F.R. §§ 3.307(a), 3.309(e) (1996); *McCay, supra.* The potential rebuttal of

such a presumption occurs only at the stage of claim-merits determination, not at the stage of determining well groundedness; the latter threshold finding is similar in form to the determination in a civil action of "whether a complaint has stated a cause of action—a basis for affording the relief sought—for which purposes the facts alleged are accepted as true." *Robinette, supra.* Hence, in view of the following discussion, the veteran would have a well-grounded soft-tissue-sarcoma claim if he has satisfied his initial burden of making a plausible showing that he currently suffers from a soft-tissue sarcoma.

■ We reach this conclusion even though there is no evidence of record (1) as to the soft-tissue sarcoma in question not being one of the four types excluded by the statute from those soft-tissue sarcomas that are presumptively service connected or (2) as to there having been a soft-tissue sarcoma manifested to a degree of compensable disability. Section 1116(a)(2)(B) establishes a general presumption of service connection for soft-tissue sarcomas arising in Vietnam veterans but then goes on to exclude four types. Under this statutory construct, at least at the stage of determining well groundedness, the veteran need not make an affirmative showing of the *absence* of something—that is, that the soft-tissue sarcoma in question is *not* one of the sarcomas excluded under section 1116(a)(2)(B). It is sufficient that there is no evidence that the sarcoma asserted to be present *is* one of the excluded ones. *Cf. Goss v. Brown,* 9 Vet.App. 109, 114 (1996) (remanding claim under 38 U.S.C. § 1112(a), (b)(13), which provides presumption of service incurrence for peripheral neuropathy arising "to a degree of 10[%] or more within one year from the date of separation from such service" in certain former prisoners of war "except where directly related to infectious causes", in part because etiology of veteran's neuropathy had not been determined).

■ As to section 1116(a)(2)(B)'s requirement that the soft-tissue sarcoma in question be "manifest to a degree of disability of 10[%] or more", the VA Schedule for Rating Disabilities generally provides for a 100% rating for malignancies during treatment and

for a period thereafter. *See, e.g.,* 38 C.F.R. § 4.116, Diagnostic Code (DC) 7627 (1996) (malignant neoplasms of gynecological system or breast), § 4.117, DC 7703 (leukemia), DC 7709 (Hodgkin's disease), DC 7715 (non-Hodgkin's lymphoma) (1996). As to soft-tissue sarcomas, the rating schedule provides that those in the torso and neck, 38 C.F.R. § 4.73, DC 5329 (1996), and of vascular origin, 38 C.F.R. § 4.104, DC 7123 (1996), will be rated 100% disabling during treatment and for a period of six months following cessation of certain treatments and thereafter generally will be rated based on residuals. Accordingly, a plausible showing of soft-tissue sarcoma would also provide a plausible showing of manifestation to a degree of 10% or more. *Cf. Goss, supra* (remanding where record apparently contained no evidence of manifestation to required 10% degree of disability).

■ That leaves as the only remaining question as to well groundedness whether the veteran has submitted sufficient evidence to make out a plausible showing of present soft-tissue sarcoma, given the presumption of credibility that attaches to that evidence for this threshold purpose, *see Robinette, supra,* and thus to well ground his claim for service connection for soft-tissue sarcoma under 38 U.S.C. § 1116(a)(1)(A) and (B). The pertinent evidence of record is essentially contained in two documents: First, the undated form that the veteran submitted with his 1990 statement in support of claim noted: "Vet treated for soft[-]tissue Sarcoma for exposed [sic] to Agent Orange". R. at 102. This form also noted a conclusion that the veteran is "unable to work". *Ibid.* Additionally, the 1984 VA medical form also noted treatment for soft-tissue sarcoma, but that form appears to be a patient history. R. at 61. The Board did not address, and should have done so, either of these documents in determining that the veteran's claim was not well grounded. However, because the Court is obliged to consider the evidence de novo in order to decide whether the soft-tissue-sarcoma claim is well grounded, *see Grivois* and *Grottveit,* both *supra,* it need not rely upon the initial assessment of that evidence by the Board. *But cf. Murphy,* 1 Vet.App. at 82

(Court remanded claim because, to extent BVA had found claim not well grounded due to lack of "medical-scientific basis", BVA failed to provide "requisite statement of 'reasons or bases' for such a conclusion").

Considering these two statements de novo, the Court concludes that, although they indicate that the veteran may have a current soft-tissue sarcoma, they do not evidence a current disability as of October 1990 when the veteran filed the claim now before us. The worksheet submitted in 1990 is undated. *See* R. at 102. It contains reports or results of physical examinations and laboratory tests pertaining to organs and systems of the body as well as medical conditions. *Ibid.* At the top of the page, on what may be a separate overlapping form or information card, there are what appear to be reference dates of "7/81, 82–83, 84, 85[,] 86." *Ibid.* There is also in the record a similar worksheet that plainly bears the date "11–30–84" but which also clearly includes entries different from those on the undated form. *Compare* R. at 102 *with* R. at 59. That 11/30/84 worksheet makes no reference to treatment for soft-tissue sarcoma. Hence, neither worksheet contains any reference to an *existing* soft-tissue-sarcoma condition. In the context of these two worksheets, the single reference to the veteran's having been "treated" for that condition cannot be read as a diagnosis relating to a particular time period as compared to being a matter of patient history. There is nothing in the record to suggest that the undated worksheet was prepared later than 1986. The November 30, 1984, VA medical examination report contains under medical history provided by the patient three references to the veteran's having been treated for soft-tissue sarcoma at unspecified times during the period from 1966 to 1984. R. at 63. The material reporting substantial musculoskeletal system impairment and disability appears to relate to November 1984. R. at 66; *see also* R. at 61.

Based on de novo review of the evidence, the Court is unable to conclude that the evidence plausibly shows a current soft-tissue-sarcoma disability at the time of the veteran's October 1990 application. Even if one were to assume that the R. at 102 worksheet was not prepared in 1984 (*but cf.* R. at 59), the most it could be said to stand for would be the proposition that the veteran had been "treated" at some time in the past (perhaps up to 1986) for soft-tissue sarcoma. There is no way for the Court to know (1) whether the soft-tissue-sarcoma reference is clinical or just a patient history based on facts provided by the veteran or (2) when the recorded treatment actually occurred as distinguished from when the reference to it was made. Accordingly, the Court must hold that the veteran's soft-tissue-sarcoma claim is not well grounded.

*3. Other claims.* The Court notes that neither 38 U.S.C § 1116 nor 38 C.F.R. § 3.309(e) could provide a presumption of service connection with regard to the veteran's gastrointestinal or other claims and, indeed, that there is no evidence of record to make a plausible showing of present disability with regard to any of those claims. *See Degmetich, Brammer,* and *Rabideau,* all *supra.* Thus, the Court holds that none of these claims is well grounded. Although the Board erred in not expressly addressing some of these claims, *see Solomon v. Brown,* 6 Vet.App. 396, 402 (1994) (citing *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991) (Board required to address all claims "reasonably raised" in a Substantive Appeal and all other claimant documents and testimony prior to Board decision)), that error is not prejudicial because these other Agent–Orange–related claims are not well grounded. *See* 38 U.S.C. 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). Accordingly, the Court will affirm the BVA decision.

### B. Miscellaneous

The Court also notes that, because a disallowance on the basis of a failure to submit a well-grounded claim is nonetheless a disallowance of a claim, in a case where a claim is found to be not well grounded (as the BVA correctly found in this case as to all the veteran's claims), the BVA should disallow the claim rather than (as it did here) vacate the RO decision and dismiss the appeal. *See Meyer v. Brown,* 9 Vet.App. 425, 433 (1996)

(relying on *Edenfield,* 8 Vet.App. at 389 (overruling *Grottveit, supra,* which had concluded that when a claim was not well grounded it was a "nullity")). Under *Edenfield,* if the veteran seeks to reopen the disallowance of the Agent–Orange–related claims that have been found not well grounded in this case, he will have to present new and material evidence under 38 U.S.C. §§ 5108 and 7104(b) in order to reopen as to the disallowed claims. *Id.* at 390.

Finally, the Court notes the following September 1991 statement by the veteran: "I do not see where taking a physical exam at a VA facility will help my case." R. at 132. As the above analysis has made clear, a medical examination or other medical evidence that shows that the veteran currently suffers from a claimed disability is a fundamental prerequisite for establishing service connection. *See Brammer* and *Rabideau,* both *supra.* If the veteran seeks to reopen his disability claim, he will need to supply medical evidence of a current disability by attending any VA examination offered or by submitting any VA, private, or SSA medical records that provide a current diagnosis or other medical evidence relating to his claim. Even in the case of a well-grounded claim, the "duty to assist is not always a one-way street". *Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991). In a case such as this, where the duty to assist has not attached because the claim is not well grounded, it is incumbent upon the veteran to do everything in his power to substantiate his claim: that is how "taking a physical exam at a VA facility" could have helped his case.

### III. Conclusion

Upon consideration of the ROA and the submissions of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, or articulation of reasons or bases—that would warrant remand or reversal. *See* 38 U.S.C. §§ 5107(a), 7104(a), (d)(1), 7261. The Court thus affirms the May 3, 1995, BVA decision insofar as it found, expressly or implicitly, that the Agent–Orange–related claims were not well grounded. The Secre-

tary's motion for summary affirmance is denied.

AFFIRMED.

FARLEY, Judge, concurring.

I concur in the holding announced by Judge Steinberg on behalf of the Court. I also concur in his opinion, but only to the extent that it affirms the BVA's decision that the appellant's claim was not well grounded under 38 U.S.C. § 5107(a) because he failed to submit the requisite evidence of a current disability. Further, as a result of the recent decision of the United States Court of Appeals for the Federal Circuit in *Barnett v. Brown,* 83 F.3d 1380 (1996), I believe that the BVA acted correctly when it vacated the purported decision on the merits by the regional office and dismissed the appeal. Although *Barnett* dealt with the question of reopening a previously denied claim upon the submission of new and material evidence, *see* 38 U.S.C. §§ 5108, 7104(b), I believe that its emphasis upon the necessity of a jurisdictional predicate for any decision on the merits extends to the well-grounded claim requirement of 38 U.S.C. § 5107(a). The suggestion of the majority that the BVA should have disallowed the claim once it concluded that it was not well grounded rather than dismissing the appeal, as it did, seems to me to be inconsistent with the spirit of *Barnett.* While I am compelled to concede that the majority's view is consistent with our decision in *Edenfield v. Brown,* 8 Vet.App. 384 (1995) (en banc), *Barnett* and *Edenfield* will have to be reconciled in some future case; however, since we are in agreement that the BVA decision here must be affirmed, this is not that case.