Citation Nr: 1443641 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 09-41 131 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for basal cell carcinoma, to include as a result of in-service exposure to herbicides, for accrued benefit purposes.

2. Entitlement to service connection for sphenoidal meningioma, to include as a result of in-service exposure to herbicides, for accrued benefit purposes.
 
3. Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD), for accrued benefit purposes.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. A. Rein, Counsel

INTRODUCTION

The Veteran had active military service from April 1968 to April 1970. He died in June 2005. The appellant is his surviving spouse.

These matters on appeal before the Board of Veterans' Appeals (Board) arise from rating decisions in which the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia, in pertinent part, denied service connection for basal cell carcinoma and sphenoidal meningioma; and denied a rating in excess of 70 percent for PTSD, all for accrued benefits purposes. [Prior to the Veteran's death, by a June 2004 rating decision, the RO concluded that a 70 percent rating for the Veteran's PTSD was warranted from the date of service connection, June 23, 1998.] 

In a November 2004 rating decision, the RO granted service connection for bilateral hearing loss, effective February 27, 2004. Prior to his death, the Veteran submitted a notice of disagreement with the effective date of the grant of service connection. Thus, the issue of entitlement to an effective date earlier than February 27, 2004 for the award of service connection for bilateral hearing loss for accrued benefit purposes has been raised by the record but has not been adjudicated by the agency of original jurisdiction (AOJ). The Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

In August 2011, the appellant testified at a hearing conducted before the undersigned Veterans Law Judge (VLJ) at the Board in Washington, D.C. A copy of the transcript of that hearing has been associated with the claims folder. 

In a November 2011 decision, the Board denied service connection for basal cell carcinoma, sphenoidal meningioma and a neck disorder; declined to reopen claims for service connection for a back disorder and a right leg disorder; denied a rating in excess of 70 percent for PTSD; and denied compensable ratings for shell fragment wound scars of the right shoulder and of the face, all for accrued benefits purposes. The appellant appealed this decision and expressly limited the issues she was appealing to the Board's denial of her claims for service connection for basal cell carcinoma and for sphenoidal meningioma and for a disability rating in excess of 70 percent for PTSD, for accrued benefits purposes. In a February 2014 Memorandum Decision, the Court reversed the Board's November 2011 decision as to its denial of service connection for accrued benefits purposes for basal cell carcinoma and sphenoidal meningioma and remanded those matters for VA to determine an appropriate disability rating and effective date for that award. The Court also vacated the Board's denial of a disability rating in excess of 70 percent for PTSD for accrued benefits purposes and remanded for readjudication consistent with the decision. 


FINDINGS OF FACT

1. The Veteran's basal cell carcinoma and sphenoidal meningioma are associated with the Agent Orange to which he was exposed in service.

2. Throughout the entire pendency of the appeal, the Veteran's service-connected PTSD symptomatology more nearly approximated the criteria for total occupational and social impairment. 

CONCLUSIONS OF LAW

1. The criteria for service connection for accrued benefits purposes for basal cell carcinoma and sphenoidal meningioma have been met. 38 U.S.C.A. §§ 1110, 5107, 5121 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.1000 (2013).

2. For the purposes of accrued benefits, resolving all doubt in the appellant's favor, the criteria for a 100 percent rating for the Veteran's service-connected PTSD have been more nearly approximated during the entire period on appeal. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.102 , 4.7, 4.126, 4.130, Diagnostic Code (DC) 9411 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100 , 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002 & Supp. 2013) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA have been codified, as amended at 38 C.F.R. §§ 3.102 , 3.156(a), 3.159, and 3.326(a) (2013). Given the favorable disposition of the issues on appeal, the Board finds that all notification and development action needed to fairly adjudicate these claims has been accomplished. 

Increased rating-PTSD

The appellant contends that the Veteran was entitled to a rating in excess of 70 percent for the service-connected PTSD due to the severity and frequency of his symptomatology. In this regard, the Board notes that the Veteran's diagnosed PTSD was service-connected and evaluated as 70 percent disabling under 38 C.F.R. § 4.130, DC 9411, which evaluates impairment resulting from this disability.

Specifically, pursuant to DC 9411, a 70 percent rating is warranted if the evidence establishes there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130, DC 9411 (2013). 

A 100 percent rating is warranted if the evidence establishes there is total occupational and social impairment due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting oneself or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms in the rating formula is not intended to constitute an exhaustive list, but rather shows examples of the types and degrees of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the diagnostic code. Instead, VA must consider all symptoms of a claimant's disability that affect the level of occupational and social impairment, including, if applicable, those identified in the American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV).

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. §4.126(a) (2013). When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126(b).

The Global Assessment of Functioning (GAF) is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. Carpenter v. Brown , 8 Vet. App. 240 (1995); Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DSM-IV). A GAF score of 51-60 is indicative of moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 41-50 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). 

Here, the Veteran was afforded a VA examination in August 1998. He reported that he was unemployed after being laid off in 1997 and unable to find work. He was married and had three children. He admitted to drinking beer when he was working. He denied a history of legal problems. He reported spending 10 days in jail after he refused to pay a fine. His current symptoms included sleep disturbance, anxiety, avoidance of people, and nightmares. Examination revealed that the Veteran appeared slightly disheveled. His behavior was cooperative and pleasant. His speech was linear and delivered at a regular rate; it was coherent. His thoughts were goal directed; he denied suicidal or homicidal ideas and audiovisual hallucinations. There was no evidence of delusional thoughts. Affect was appropriate. His mood was labile and cognitive functions showed that he was alert and oriented times four. Memory was intact. His GAF score was 55. 

In September 1998, the Veteran reported sleep problems, lack of interest, lethargy, poor memory and concentration, and avoidance of others. He denied suicidal and homicidal ideation. There was no evidence of alcohol or substance abuse or psychosis. The Veteran was alert and oriented times four; his speech was coherent and relevant; his mood and affect were within normal limits; his eye contact was good; his thoughts were goal directed; and he was casually dressed. A psychiatric evaluation in December 1998 shows that the Veteran had sleep disturbances. He also avoided people. He reported having a bad memory and concentration problems. His GAF score was 50. 

A Vet Center letter dated in September 1999 reveals that the Veteran was cooperative, well-oriented, had impaired short-term memory, a blunted and flat effect, and slow speech. He was noted to have continued problems with depression, nightmares, flashbacks, sleep disturbances, anger-rage attacks, intensive intrusive thoughts, survivor guilt, loss of interest in significant activities, isolation, avoidance of feelings and personal relationships. The therapist determined that the Veteran had reached his maximum level of recovery.

The Veteran was afforded a second VA examination in November 1999. He was still unemployed. Psychiatric symptoms included nightmares, flashbacks with aggressiveness toward his wife, and being increasingly withdrawn. Examination revealed that the Veteran was fairly groomed and dressed casually in clean clothing. No psychomotor abnormalities were observed. He was passively cooperative. His speech was underproductive, coherent, relevant, and at a regular rate. His thoughts were goal-directed; he denied suicidal or homicidal ideas. When questioned about hallucinations, he reported having nightmares of shooting at people and being shot at all the time. There was no evidence of delusional thoughts. Affect was appropriate; mood was labile; and cognitive functioning showed that the Veteran was alert and oriented times three. His GAF score was 49, and the examiner indicated that his highest GAF score in the last year was 53.

In a June 2001 letter, the Veteran's therapist at the Logan Vet Center reported that the Veteran was cooperative, well-oriented, had impaired short-term memory, a blunted and flat effect, and slow speech. He was again noted to have continued problems with depression, nightmares, flashbacks, sleep disturbances, anger-rage attacks, intensive intrusive thoughts, survivor guilt, loss of interest in significant activities, isolation, avoidance of feelings and personal relationships. The therapist determined that the Veteran had reached his maximum level of recovery and opined that the Veteran would never be able to maintain gainful employment. 

In this case, by resolving all reasonable doubt in favor of the appellant, the Board concludes that the evidence of record reflects total social and occupational impairment as a result of the Veteran's PTSD. In this regard, the Board notes that the evidence of record reveals subjective complaints of depression, nightmares, flashbacks, sleep disturbances, anger-rage attacks, intensive intrusive thoughts, survivor guilt, loss of interest in significant activities, isolation, avoidance of feelings and personal relationships. The record also indicates that the Veteran received ongoing evaluation and therapy for relevant symptoms. The Veteran was also shown at times to have fair grooming and hygiene. 

The evidence also shows that there is social and occupational impairment regarding the Veteran's family relationships, to include aggression toward his wife and social withdrawal. The Board also finds that the June 2011 letter from the Veteran's therapist demonstrates that the Veteran's PTSD symptoms were so severe that he was prevented from seeking and obtaining gainful employment. Indeed, clinicians have assigned GAF scores which essentially reflect their opinion that the Veteran's psychiatric problems are of a magnitude to prevent him from working and that his mental disorder results in minimal meaningful social contacts. Specifically, the August 1998 VA examiner noted a GAF score of 50, and the November 1999 VA examiner assigned a GAF score of 49. As noted above, a GAF score of 41 to 50 contemplates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or social functioning (e.g., no friends, unable to keep a job). 

All of the particular symptoms described in the rating criteria for a particular degree of disability are not required to be present. Here, medical evidence clearly shows that the level of impairment more nearly approximates a 100 percent rating during the entirety of the appeal period. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). The severity of the Veteran's PTSD symptoms, and the effect of these symptoms on his work situation, more nearly approximate total occupational and social impairment, which is the level of impairment contemplated by a 100 percent rating. Id. Accordingly, resolving all doubt in the appellant's favor, a 100 percent rating is granted. 38 C.F.R. §§ 4.3, 4.7, 4.130, DC 9411.

Service connection for basal cell carcinoma and sphenodial menigioma

The appellant contends that the Veteran had basal cell carcinoma and sphenoidal meningioma which were the result of in-service exposure to herbicides or to shell fragment wounds sustained in service. In this regard, the Board notes that service connection may be granted for disability resulting from disease or injury incurred in or aggravated during service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303 (2013). That determination requires a finding of current disability that is related to an injury or disease in service. Watson v. Brown, 4 Vet. App. 309 (1993); Rabideau v. Derwinski, 2 Vet. App. 141 (1992). Service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury that was incurred or aggravated in service. 38 C.F.R. § 3.303(d) (2013). 
Service connection may be presumed for certain chronic diseases which develop to a compensable degree within one year after discharge from service, even though there is no evidence of such disease during the period of service. That presumption is rebuttable by probative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002 & Supp. 2013); 38 C.F.R. 3.307, 3.309(a) (2013). 

Where the evidence, regardless of its date, shows that the Veteran had a chronic condition in service or during an applicable presumption period and still has that chronic disability, service connection can be granted. That does not mean that any manifestations in service will permit service connection. To show chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time as distinguished from merely isolated findings or a diagnosis including the word chronic. When the disease entity is established, there is no requirement of evidentiary showing of continuity. 38 C.F.R. § 3.303(b) (2013).

If there is no evidence of a chronic condition during service or an applicable presumptive period, then a showing of continuity of symptomatology after service may serve as an alternative method of establishing a service connection claim. 38 C.F.R. § 3.303(b) (2013). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was noted during service; (2) evidence of post- service continuity of the same symptomatology and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Evidence of a chronic condition must be medical, unless it relates to a condition to which lay observation is competent. If service connection is established by continuity of symptomatology, there must be medical evidence that relates a current condition to that symptomatology. Continuity of symptomatology applies only to those conditions explicitly recognized as chronic. 38 C.F.R. § 3.309(a) (2013); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 
Absent affirmative evidence to the contrary, there is a presumption of exposure to herbicides (to include Agent Orange) for all Veterans who served in Vietnam during the Vietnam Era. See 38 U.S.C.A. § 1116(f) (West 2002) and 38 C.F.R. § 3.307(a)(6)(iii) (2013). If a Veteran was exposed to a herbicide agent during active service, the following diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes (also known as Type II or adult-onset diabetes mellitus), Hodgkin's disease, multiple myeloma, non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea) and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). VA has determined that there is no positive association between exposure to herbicides and any other condition for which it has not specifically determined that a presumption of service connection is warranted. Notice, 59 Fed. Reg. 341 -346 (1994); see also 61 Fed. Reg. 57586 -57589 (1996). 

Recently, VA amended the list of covered diseases presumed service-connected due to herbicide exposure as to include the conditions of all chronic B-cell leukemias (including, but not limited to, hairy-cell leukemia and chronic lymphocytic leukemia), Parkinson's disease, and ischemic heart disease. A new Note 3 to section 3.309(e) provides that "the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease." See 75 Fed. Reg. 52,202 -53,216 (Aug. 31, 2010), to be codified later at 38 C.F.R. § 3.309(e) . 

Notwithstanding the presumption, service connection for a disability claimed as due to exposure to Agent Orange may be established by showing that a disorder resulting in disability or death was in fact causally linked to such exposure. Brock v. Brown, 10 Vet. App. 155, 162-64 (1997); Combee v. Brown, 34 F. 3d 1039, 1044 (Fed. Cir. 1994), citing 38 U.S.C.A. § 1113(b) and 1116 and 38 C.F.R. § 3.303.

Here, the Veteran's personnel records confirm that he was stationed in the Republic of Vietnam from 1968-1969. His in-service exposure to herbicides is conceded. Service treatment records do not show treatment for, or diagnosis of, basal cell carcinoma or sphenoid meningioma. They do show that the Veteran had a shell fragment wound on the left side of his face in January 1969, which the appellant reports is located in the same area that his basal cell carcinoma was located and which the appellant contends injured his brain and may have caused his brain cancer. The Veteran's May 1970 discharge examination showed clinically normal skin and normal neurological examination. Post-service medical records show that the Veteran was diagnosed with basal cell carcinoma in July 1998, and with sphenoid meningioma in September 1999. 

At an October 2001 Agent Orange Registry examination, the examiner, a physician's assistant, stated that the Veteran's basal cell carcinoma and brain tumor were felt to be associated with his prior Agent Orange exposure and that these disorders were "recommended for VA compensation." In a March 2002 letter to the Veteran from his local VA medical center, the results of the October 2001 VA Agent Orange examination were reported, and this same physician's assistant stated that the Veteran's basal cell carcinoma and brain tumor are related to Agent Orange. Significantly, the claims folder contains no contrary medical opinions. Therefore, by resolving all reasonable doubt in favor of the appellant, the Board is granting service connection for basal cell carcinoma and for sphenodial meningioma, for accrued benefits purposes.



(CONTINUED ON NEXT PAGE)

ORDER

Service connection for basal cell carcinoma, for accrued benefits purposes, is granted.

Service connection for sphenoidal meningioma, for accrued benefits purposes, is granted. 

A 100 percent disability rating for PTSD for accrued benefits purposes, is granted, subject to the criteria applicable to the payment of monetary benefits.




____________________________________________
THERESA M. CATINO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs